[L. A. No. 27194.   In Bank.   May 14, 1963.]

DONALD V. FRANKLIN, Plaintiff and Respondent, v. CHARLES P. HANSEN, Defendant and Appellant.

Galvin R. Keene for Defendant and Appellant.

Arthur V. Jones for Plaintiff and Respondent.

PEEK, J.—In this appeal the defendant Charles P. Hansen seeks a reversal of a judgment in the amount of $5,000 in favor of plaintiff Donald V. Franklin, a licensed real estate broker, for claimed commissions in procuring a buyer for defendant's real property.

Defendant owned residential property in Newport Beach. Plaintiff had acted as an agent for defendant in the rental of the property and had informed defendant that he would like to represent defendant in selling the property. A sale price of $115,000 was agreed upon and although plaintiff obtained several offers for the property over a period of several months, all were for less than the agreed price. Defendant eventually agreed that he would accept an offer for $100,000. None of the transactions between the parties up to this point were in writing, defendant having assured plaintiff that a signed listing would be unnecessary as his word was good.

On January 15, 1960, plaintiff obtained an offer for $100,000 and telephoned defendant, requesting an authorization by telegram to sell the property. In response, defendant sent the following telegram: ''Los Angeles, California . . . D. V. Franklin, 208 Marine Balboa Island California. This is con-

firm that I will sell 608 South Bay Front Balboa Island for 100,000 cash this offer good until noon 1-19-60. Chas. P. Hansen.''

On January 19, 1960, plaintiff again telephoned defendant and advised that he had sold the property and had accepted a check for $5,000 as a down payment. Defendant stated that he was pleasantly surprised, that delivery could take place when the present lease terminated in a few months, and consented to the suggested escrow agent. But when a standard form deposit receipt providing for payment of a 5 per cent commission to plaintiff was presented to defendant, he refused to sign, and indicated that he wished "to get out of the deal." On January 22 defendant and the prospective buyers appeared at plaintiff's office. When the buyers refused to waive their rights under the agreement defendant admitted that he was "stuck" with the sale and that plaintiff would receive his commission. Subsequently, however, he refused to sign any of the documents necessary to complete the sale of the property, and also refused to pay the agreed commission.

Plaintiff's complaint alleges breach of a commission contract, reciting defendant's promise to abide by the verbal listing of the property, the telegram in "confirmation thereof," the arrangements for the sale of the property, the defendant's refusal to proceed with the sale and his promise to pay the 5 per cent commission notwithstanding.

Relying on the statute of frauds defendant demurred to the complaint for commissions, which demurrer was overruled. The trial court heard, over defendant's objections, parol evidence as to all transactions between the parties and awarded judgment as prayed by plaintiff. Defendant contends on this appeal that neither the telegram nor any other writing constituted a sufficient memorandum or ratification of a contract of employment to satisfy the statute of frauds.

Section 1624 of the Civil Code provides in part: "The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent: . . . 5. An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission." (See also Code Civ. Proc., § 1973, subd. 5; Civ. Code, § 2310.)

We have before considered the nature of a memorandum sufficient to satisfy subdivision 5 of section 1624. (See *Pacific Southwest Dev. Corp.* v. *Western Pac. R. R. Co.*, 47 Cal.2d

62 [301 P.2d 815].) There a broker sued to recover compensation for services rendered to a buyer in procuring an option to purchase real property. The broker's offer of proof demonstrated substantial services rendered to the buyer, but the only writing subscribed by the buyer was a letter to the broker as follows: " 'I am in a position to take an option on the Lenfest property at $3,000.00 per acre. We would not wish to pay more than $1,500.00 for the option and would want it for 90 days, with a contingent extension of time long enough to have the property rezoned. . . . If you think this proposal is worth your trip, let me know perhaps by telephone tomorrow and I will arrange to meet you at San Jose—maybe we can get the deal signed up. . . .' " (47 Cal.2d 62, 68.)

At page 69 in the foregoing case the court stated: "The only writing with which defendant can be charged here is the letter of August 29, 1950 . . . , and as above quoted, it made no reference to the fact of employment by defendant of plaintiff or to any compensation. True, the latter reference is not essential if there is a contract of employment, for a reasonable amount as a commission will be inferred. [Citations.] But where there is a failure to mention the fact of employment, the further fact that there is no mention of a commission is significant. The authorities require that a writing 'subscribed by the party to be charged, or his agent' must unequivocally show the fact of employment of the broker seeking to recover a real estate commission [citations]. It must therefore be concluded that the writings here are insufficient under the statute of frauds to sustain plaintiff's claim."

Here, too, as to the content thereof, the writing in the instant case is similar to that in the cited case since it also fails to expressly recite or make reference to the existence of any employment contract or to any compensation. In both cases parol evidence demonstrated that the real nature of the agreement between the parties was one of employment; that the broker in each instance rendered substantial, bargained-for-services which culminated in the achievement of the objective for which employed; and that neither broker was guilty of overreaching or improper and unethical practices. It does not appear that we can give full effect to the *Pacific Southwest Dev. Corp.* case and at the same time sustain the instant award.

The sufficiency of a writing to satisfy the statute of frauds cannot be established by evidence which is extrinsic to

the writing itself. (Code Civ. Proc., § 1973.)   While a telegram, sufficient in content, may satisfy the statute (*Niles* v. *Hancock,* 140 Cal. 157 [73 P. 840]; *Gibson* v. *De La Salle Institute,* 66 Cal.App.2d 609 [152 P.2d 774]), still it must contain the essential elements of a specific, consummated agreement. (*Zellner* v. *Wassman,* 184 Cal. 80 [193 P. 84]; *Fritz* v. *Mills,* 170 Cal. 449 [150 P. 375].)   Where it discloses no promise or agreement and cannot be made clear as to its significance without resort to parol evidence, it is inadequate. (*Ellis* v. *Klaff,* 96 Cal.App.2d 471 [216 P.2d 15]; *Sherwood* v. *Lowell,* 34 Cal.App. 365 [167 P. 554].)   But where it imports the essentials of a contractual obligation although it fails to do so in an explicit, definite or complete manner, it is always permissible to show the circumstances which attended its making. Thus in *Gibson* v. *De La Salle Institute, supra,* 66 Cal.App.2d 609, parol evidence was resorted to in explanation of certain trade terms contained in a telegram offer. Likewise in *Brewer* v. *Horst & Lachmund Co.,* 127 Cal. 643 [60 P. 418, 50 L.R.A. 240], an agent, using certain code words, wired his principal that he had purchased goods, and the principal sent a confirming telegram to the seller, also utilizing code words. Extrinsic evidence was held admissible in explanation of the two telegrams and they together were deemed to satisfy the statute of frauds.   Such evidence is also admissible to resolve ambiguities on the face of the memorandum (*Balfour* v. *Fresno Canal & Irr. Co.,* 109 Cal. 221, 225-226 [41 P. 876]), or to ascertain a term of the agreement by resort to another document referred to in the memorandum. (*Searles* v. *Gonzales,* 191 Cal. 426 [216 P. 1003, 28 A.L.R. 78].) But in each of the foregoing instances the memorandum itself demonstrated the existence of a contractual intent on the part of the one to be charged, and extrinsic evidence was necessary only to define the limits thereof.

   The telegram in the instant case fails to use any words in recognition of a contractual obligation for a commission. While it may be a sufficient memorandum of an agreement to *sell* the property, it is the alleged commission agreement which is sought to be enforced. There are no ambiguities to be resolved or references to extrinsic materials which would aid in ascertaining a meaning not made definite on the face of the document. True, the writer purports to "confirm," but he also states in definite and certain language that which he confirms. The meaning of the telegram is clear and definite—

it requires no aid in its interpretation, and it does not imply, infer or suggest a commission agreement. It is only by resort to extrinsic matters not suggested by the writing that it is possible to determine with any justification that defendant had agreed to compensate plaintiff for his services. This is not sufficient under the established law.

It is suggested in a number of cases, and urged in the instant case, that a more liberal construction of the statute of frauds should be employed to protect a broker from being defrauded by a landowner. (See Note 80 A.L.R. 1457.) ■ The statute, of course, does not purport to afford a greater degree of protection to an agent or broker, as distinguished from a principal. Real estate brokers are licensed as such only after they have demonstrated a knowledge of the laws relating to real estate transactions (Bus. & Prof. Code, §§ 10150, 10153), and it would seem that they would thus require less protection against pitfalls encountered in transactions regulated by those laws. ■ In *Pacific Southwest Dev. Corp.* v. *Western Pac. R. R. Co.*, *supra*, 47 Cal.2d 62, the court stated at page 70: "Plaintiff is a licensed real estate broker and, as such, is presumed to know that contracted for real estate commissions are invalid and unenforceable unless put in writing and subscribed by the person to be charged. [Citations.] Nevertheless, plaintiff failed to secure proper written authorization to protect itself in the transaction. Rather it assumed the risk of relying upon claimed oral promises of defendant, and it has no cause for complaint if its efforts go unrewarded."

Moreover, the cases on which plaintiff relies as giving more favorable treatment to an agent or broker are distinguishable. Thus in *Kennedy* v. *Merickel*, 8 Cal.App. 378 [97 P. 81], a writing which expressly provided for the payment of commissions, although the amount was left uncertain, was held at page 381 to be "a sufficient compliance with the statute." As authority for the foregoing statement the court relied on *Imperato* v. *Wasboe*, 47 Misc. 150 [93 N.Y.S. 489], wherein the following memorandum was held sufficient under the New York statute: "Mr. P. Imperato, Real Estate Broker—Dear Sir: . . . There will be no need of my meeting you if you haven't a party who desires to purchase my house No. 416 East 124th Street at $15,000, as I am not very anxious to dispose of my property, and I do not intend to sell for any less. Very truly yours, O. Wasboe." Significantly the memoran-

dum addresses the agent as a "Real Estate Broker" and recognizes that the agent is acting in such capacity (i.e., ". . . if you haven't a party who desires to purchase my house . . ."). Authorization to sell at $15,000 was held by the New York court to have been sufficiently established by the writing.

Again, in *Toomy* v. *Dunphy*, 86 Cal. 639, 640 [25 P. 130], a note which recited: " 'Henry Toomy can arrange for the sale of my ranch in Nevada, as per within memorandum,' " was held to sufficiently establish the employment of Toomy as an agent, and the fact of consideration for such services was implied therefrom.

Of the cases to which we are referred, the foregoing lends plaintiff most support. But in each case the writing evidenced at least the employment relationship, whereas the memorandum in the case before us is silent as to the existence of such a relationship.

■ Written evidence of the employment relationship has always been deemed an essential requirement of the statute of frauds. In addition to the *Pacific Southwest Dev. Corp.* case, *supra,* other decisions have held that the failure to expressly provide for employment is fatal to the sufficiency of any memorandum. Thus, in *Morrill* v. *Barneson,* 30 Cal.App.2d 598 [86 P.2d 924], a letter which fully described the property, the sale price and terms thereof, and provided for the payment of the "regular 5% commission," was held insufficient because it failed to expressly create an employment relationship with anyone. In *Herzog* v. *Blatt,* 80 Cal.App.2d 340 [180 P.2d 30], a memorandum in the form of an offer to accept "8400 net" for designated property was also held insufficient because it too failed to authorize anyone to act for the owner. And in *Kleinsorge & Heilbron* v. *Liness,* 17 Cal. App. 534 [120 P. 444], a writing setting forth the price, terms and description of property offered for sale by the signer thereof, which writing was delivered to the plaintiff real estate brokers although not expressly addressed to them, was held insufficient as not bearing written evidence of a contract of employment or authorization. For the proposition that a sufficient writing "must unequivocally show on its face the fact of employment of the broker" see also *Blanchard* v. *Pauley,* 92 Cal.App.2d 244, 247 [206 P.2d 864]; *Sanstrum* v. *Gonser,* 140 Cal.App.2d 732 [295 P.2d 532]; *Edens* v. *Stoddard,* 126 Cal.App.2d 56, 60 [271 P.2d 610]; *Hooper* v. *Mayfield,* 114 Cal.App.2d 801, 807 [251 P.2d 330].

Plaintiff herein has neither alleged nor urged the applica-

tion of an equitable estoppel, pursuant to which doctrine a party to an oral agreement might be estopped to rely on the statute of frauds in instances where the elements of the doctrine can be established. (See *Monarco* v. *Lo Greco*, 35 Cal.2d 621, 626 [220 P.2d 737].)

In view of the foregoing we are compelled to the conclusion that the memorandum in the case now before us is obviously insufficient to satisfy the requirements of the statute of frauds under the prevailing standards. Accordingly, the judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Tobriner, J., concurred.