[Civ. No. 30386.   Second Dist., Div. One.   Nov. 23, 1966.]

IRA GARSON REALTY CO., Plaintiff and Appellant, v. SAM AVEDON et al., Defendants and Respondents.

Bernard Reich for Plaintiff and Appellant.

Allen, Fasman & Wolf and Michael J. Fasman for Defendants and Respondents.

WOOD, P. J.—This is an action to recover commission for sale of real property, or to recover damages resulting from alleged interference by the defendant buyer (Bienefeld), and defendant Premiere Aluminum Products, with plaintiff's contractual relationship with the sellers of the property (Avedon and Chotiner). Plaintiff appeals from a judgment of nonsuit.

Defendants Sam Avedon and Willard Chotiner, who were the owners of unimproved real property (about 15 acres) at 182d and Hoover Streets in Los Angeles County, sold the property on May 10, 1963, to defendant Jonas Bienenfeld and his wife for $322,500. Defendant Jonas Bienenfeld was the president of defendant Premiere Aluminum Products, Inc.

Prior to October 1962, Jack Neil, a real estate salesman employed by plaintiff Ira Garson Realty Co., saw a sign on said real property, which sign stated ''For Sale or Will Build''—''Courtesy to Brokers''; also, a telephone number was on the sign. He called the number and asked Avedon whether he would pay a commission ''in the event that we brought him an acceptable deal.'' Avedon replied in the affirmative, and they discussed the size and the price of the property. Avedon said that he wanted $400,000 net after payment of costs of sale and commissions. Neil asked for and received a ''plot plan'' of the property.

Thereafter, in October and November, Neil showed the property to several persons, and advised Avedon thereof. In December, Neil saw a newspaper advertisement wherein defendant Premiere Aluminum Products stated that it desired to acquire a parcel of land containing 10 to 15 acres. Neil wrote a letter to Premiere at the address stated in the advertisement, and he received a telephone call from Mrs. Bernstein (defendant Bienenfeld's daughter), who said that she was responding to Neil's letter. Neil, after saying that he had some property which was available for sale, made an appointment to show the property to her. He showed her several parcels of land and, while they were riding in an automobile on the freeway, he pointed to the Avedon-Chotiner property. She said that she had seen that property. On February 18, 1963, Neil took Mrs. Bernstein to the Avedon-Chotiner property. On February 20, he sent a letter to Mrs. Bernstein, enclosing a copy of the plot plan of the property, and stating that she should telephone him (Neil) if she needed further information.

On February 25, Neil, acting on behalf of Garson, sent a letter to Avedon wherein he stated that the property had been ''submitted'' to Premiere Aluminum Products, Inc., on February 18, and he requested that Avedon, if contacted by Premiere, refer Premiere to Garson for negotiations. The letter also stated: ''Kindly acknowledge receipt of this letter on attached stub and return to us.'' (A portion of the letter paper below a perforated line was referred to as a stub.) Thereafter (date not in record, but apparently after April 17, 1963), Garson received the paper stub, which stated: ''I hereby acknowledge receipt of your letter dated 2-25-63 submitting my property located at 500 West 182nd Street.'' The receipt or stub was signed: ''Willard Chotiner.'' A notation made thereon by Chotiner was: ''Sent set up 4-17-63.''

On April 17, 1963, Chotiner sent a "circular letter" to 35 brokers—some of the letters were signed by Chotiner, and the other letters were unsigned. The letter refers to an enclosed plot plan and states further that "We [Chotiner and Avedon] would like to list our property" at 182d Street for sale for $375,000 cash, and that further information can be obtained by calling Chotiner. Chotiner "believed" that he had sent a copy of the circular letter to Garson. (Garson introduced in evidence an unsigned copy of the circular letter addressed to Bob Sontag, who apparently was unrelated to the parties herein.)

On May 1, 1963, Neil received a message that Mrs. Bernstein had telephoned and said that she wanted to see the property the next morning. He went to the Premiere plant the next morning and had a conversation with Mrs. Bernstein, who introduced him to her father, defendant Bienenfeld (Premiere's president). Bienenfeld said that he was not interested in the Avedon property; that several people had called him about the property; and that he would like to see other parcels. Neil took Bienenfeld and Mr. Miller (manager of Premiere) to see several parcels, including the Avedon-Chotiner property, and he said that it could be purchased for $350,000 (he had told Mrs. Bernstein previously that the purchase price was $420,000).

On May 8, 1963, Neil sent to Chotiner a letter (with an attached paper stub) similar to the letter he had sent to Avedon on February 25. The letter stated that Neil showed the property to Premiere on May 2, 1963, and requested that Chotiner sign the stub acknowledging receipt of the letter. Chotiner did not sign the receipt or send it to Neil or Garson.

About May 1, Bienenfeld, who had examined the property with his "builder," telephoned the number which he had seen on the sign at the property, and he had a conversation with Chotiner. They had further negotiations, and on May 10 Bienenfeld made a written offer to purchase the property for $322,500. The offer was accepted, and the property was sold to Bienenfeld and his wife.

There was also evidence that during April 1963 Bienenfeld had been negotiating for the purchase of another parcel as a building site for Premiere, but those negotiations had been terminated.

After the property had been sold, Garson demanded that Avedon and Chotiner pay Garson a commission on the sale.

The demand was refused, and Garson commenced the herein action.

Appellant contends that there was substantial evidence that the defendant buyer (Bienenfeld) and the defendant Premiere Products, Inc., intentionally interfered with plaintiff Garson's contractual relations with the defendant sellers (Avedon and Chotiner). It also seems that appellant contends that the defendant sellers intentionally interfered with Garson's contractual relations with the buyer and Premiere Products.

The record herein does not disclose that any of the defendants, Bienenfeld, Premiere Products, Avedon or Chotiner, intentionally or at all interfered with any contractual relationship of plaintiff Garson. (Cf. *Jaffe* v. *Albertson Co.*, 243 Cal.App.2d 592, 611-615 [53 Cal.Rptr. 25].)

With reference to Garson's assertion that it had an agreement, partly oral and partly written, with defendants Avedon and Chotiner for the payment of a commission to Garson, the question arises as to whether such alleged agreement complied with the statute of frauds. "So far as here applicable, the statute of frauds provides (Civ. Code, § 1624) : 'The following contracts are invalid, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged or by his agent : . . . 4. An agreement . . . for the sale of real property . . . and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged; 5. An agreement authorizing or employing an agent or broker to purchase or sell real estate . . . for compensation or a commission.' To the same effect see subdivisions 4 and 5 of section 1973 of the Code of Civil Procedure." (*Jaffe* v. *Albertson Co., supra,* pp. 592, 603.)

In the present case, Neil (Garson's salesman), having discovered that the property was for sale, telephoned Avedon in October 1963 and asked whether he would pay a commission if Garson brought Avedon "an acceptable deal." (Compare factual situation in *Ira Garson Realty Co.* v. *Brown,* 180 Cal.App.2d 615, 623 [4 Cal.Rptr. 734].) Avedon replied that he would like to receive "$400,000.00 net" for the property. Neil did not obtain an exclusive listing from Avedon—"all he did was to solicit from him the opportunity to sell the property"; and Avedon orally indicated his willingness to sell the property for $400,000 net. (Cf. *Ira Garson Realty Co.* v. *Brown, supra,* p. 623.)

In December, Neil discovered that Premiere was interested in purchasing land as a building site. After Neil showed several parcels of land, including the Avedon-Chotiner property, to the daughter of Premiere's president, Neil sent a letter to Avedon (in February) stating that he had "submitted" the land to Premiere and requested that if Premiere contacted Avedon, to refer Premiere to Neil for negotiations. The letter also requested that Avedon acknowledge receipt thereof. There was no reference to a commission in the letter. In April, Chotiner sent a circular letter to 35 brokers, including Garson, stating that the property was for sale. Some of the letters were signed by Chotiner, but there is no evidence that a signed letter was sent to Garson. Sometime thereafter, Chotiner signed the paper stub acknowledging receipt of a letter which Neil had sent to Avedon in February. In May, after Bienenfeld had obtained Chotiner's telephone number from the sign on the property, and thereafter had negotiated with Chotiner, the property was sold to the Bienenfelds for $322,500. The only writing signed by Chotiner or Avedon was the paper stub which Chotiner signed acknowledging receipt of Neil's letter of February 25. There was no reference in the letter or the paper stub to a commission. There was no language therein sufficient to constitute an employment of Neil to sell the property. Apparently Neil and Garson, without having obtained an appropriate written authorization, elected to proceed upon the basis of the telephone conversation, which Neil had with Avedon, in the hope of eventually obtaining authorization by a provision in the formal agreement of sale.

The court did not err in granting the motion for a nonsuit.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied December 14, 1966, and appellant's petition for a hearing by the Supreme Court was denied January 18, 1967.