[Civ. No. 8314.   Fourth Dist., Div. Two.   Dec. 19, 1967.]

THELMA J. ROSENBAUM, Plaintiff and Respondent, MELVIN E. ROSENBAUM, Defendant and Appellant.

Blodget, Cochran & Anderson and Frank Domenichini for Defendant and Appellant.

Hamilton & Mueller and Richard D. Hamilton for Plaintiff and Respondent.

McCABE, P. J.—We have concluded that plaintiff has no cause of action premised upon an agreement to pay her a real estate commission and has failed to sustain the burden of proof of any fraud allegedly practiced upon her by defendant Rosenbaum. Attempted appeal from the order denying motion for new trial is dismissed. (Code Civ. Proc., § 963.) Appellant noticed an appeal from the order denying the motion to vacate the above judgment and enter conclusions of law con-

sistent with the findings of fact (Code Civ. Proc., § 663); but since the motion called upon the trial court to repeat or overrule the former judgment on the same facts, the order is nonappealable and the appeal is dismissed. (*Fidler* v. *Schiller,* 212 Cal.App.2d 569, 570 [28 Cal.Rptr. 48].)

Plaintiff Thelma J. Rosenbaum was married to defendant Melvin E. Rosenbaum in 1960. At that time they had an agreement in writing that property owned by each at the time of the marriage and all increments therefrom would remain the separate property of the party owning it. Also, they had orally agreed that all earnings during the marriage would be the separate property of the party who earned the money.

Plaintiff had been a licensed real estate broker since 1948. She had also on her own account dealt in real estate by buying and improving and selling it. Plaintiff was admittedly aware that to collect a commission a real estate broker had to have an agreement in writing. In spite of this knowledge, she, on several previous occasions, had sold property for her defendant husband without such a writing and had been paid a commission. At least one such property thus sold by her was owned by a partnership in which defendant owned a one-half interest.

In 1959 or 1960, defendant Visbeek Industrial Park, a corporation, (hereafter referred to as the Corporation) purchased a 52-acre parcel of land which was owned by the Visbeeks. Defendant Rosenbaum was a stockholder and a director and president of the defendant Corporation. Defendant informed plaintiff he owned 30 percent of the stock, whereas, the testimony at trial revealed that one Lina Dashner owned one-half of defendant's stockholdings in the corporation. From the evidence there produced, it appears the Corporation, in the purchase of the Visbeek property, assumed certain obligations as to the type of work to be done on the property and the type of improvements which were to be developed on the 52-acre parcel. Sometime before the events recited, the Corporation had sold a small parcel which left a remainder of approximately 49 plus acres vested in the Corporation.

There is a direct conflict in the evidence as to whether defendant Rosenbaum ever requested plaintiff to sell the remaining Visbeek property owned by the Corporation. The plaintiff testified she was requested by her husband to sell the property as early as late 1960 or early 1961 and there were

many conversations regarding the price per acre if sold as a whole or in parcels.

Although denied by defendant Rosenbaum, plaintiff testified and the court found that defendant Rosenbaum had told plaintiff the Corporation would pay a 5 percent commission to the procuring real estate broker; the minutes of the Corporation provided a 5 percent commission would be paid to the procuring real estate broker; therefore, plaintiff's legal rights to a commission were protected; he was employing her on behalf of the Corporation to sell the property and he would compel the Corporation to pay the commission if she were successful. Plaintiff testified defendant Rosenbaum on several occasions informed her he controlled the Corporation. Plaintiff testified that during the period here in question she had confidence in her husband's word and trusted him.

Plaintiff testified she expended much time in trying to sell the Visbeek property, writing letters, contacting real estate salesmen, and work of like nature to sell the property but all to no avail. Defendant Rosenbaum was introduced by plaintiff to at least two of such persons and he personally showed the plot plans and the property to them. Plaintiff also testified she spent several hundred dollars on food, car expenditures and like items in her attempt to sell the property.

On June 18, 1962, defendant assertedly told plaintiff the local school board was considering a site for a new high school and the Visbeek property was available to be presented to it. Before this date, the school board had not considered the Corporation property and was unaware it was available. That day, plaintiff telephoned a member of the school board and gave her the information the Visbeek property was available. Arrangements were made to have the members of the school board meet with Mr. Rosenbaum to look over the plans and plot maps. Without the presence of plaintiff, defendant Rosenbaum informally met with the members of the school board at a hastily called meeting on June 18. Members of the board showed interest in the property. At the previously scheduled formal meeting the same evening, the property was discussed and the price per acre given the members of the board. At that meeting the member of the school board who had had the telephonic conversation with plaintiff, announced that plaintiff was the person who "got the ball rolling." Although denied by defendant, there was testimony that because of the complications in the Corporation agreement with the previous owner for the development of the property,

there would have to be a "friendly" condemnation action. Although denied by defendant, plaintiff testified defendant told her the reason for a "friendly" condemnation action was to avoid taxes and a tax would have to be paid if the property was sold directly to the school district without condemnation proceedings. Prior to this time the school district had never condemned any property.

From June 18, 1962 onward, plaintiff had no further contact with the school board or the transaction. A few days after June 18, the school board decided to commence a condemnation action. It did so and on April 1, 1963, by an agreement with the Corporation, the property became the property of the school board.

In September 1962, defendant Rosenbaum brought a divorce action and plaintiff cross-complained for a decree of separation which she eventually obtained. In her declaration which became part of the official court file, she did not list as an asset any commission from, or to be obtained from, the sale of the Visbeek property.

Plaintiff by her complaint, filed on August 4, 1964, sets forth all of her allegations in two causes of action, but by her prayer premised upon the two causes of action she sought to recover $25,097.40 upon the theory (1) breach of contract, (2) constructive trust, and (3) fraud, and additionally sought recovery of $15,000 exemplary damages. The Corporation and Melvin Rosenbaum were named as defendants.

When plaintiff rested her case, defendant Corporation made a motion under section 631.8, Code of Civil Procedure, which motion was granted.

In essence the trial court found defendant Rosenbaum had represented to plaintiff (1) Corporation would pay 5 percent commission to a procuring agent, (2) the minutes of the Corporation contained this provision, (3) if plaintiff was the procuring agent her rights to a commission were legally protected, and (4) defendant was employing her on behalf of the Corporation to procure a purchaser and he would compel the Corporation to pay her the commission. The court found all the representations were made between late 1960 and June 18, 1962, and the representations were, and each was, totally and completely false and known to defendant to be false; defendant intended to deceive plaintiff; plaintiff justifiably relied upon the representations and spent $500 of her own money attempting to procure a purchaser and three hours per day were devoted to this end; the reasonable value of plaintiff's

efforts was $7,500. The court found plaintiff was not estopped; her cause of action was not barred by Code of Civil Procedure, sections 339, subdivision 1, 1973, subdivision 5, Civil Code, section 1624, subdivisions 2, 4 or 5. Additionally, the court found plaintiff's cause of action was not disposed of in the divorce and separate maintenance action; plaintiff was not guilty of laches or unreasonable delay by filing her action on August 4, 1964; plaintiff was the procuring broker for the school board sale; and defendant had requested the school board to acquire the property by condemnation action.

Defendant has noticed an appeal from the judgment entered November 18, 1965, in which the court awarded plaintiff $8,000 and denied plaintiff recovery against the Corporation. No appeal has been taken by plaintiff from the judgment denying her recovery against defendant Corporation.

It is conceded that there was no written memorandum upon which a cause of action could be stated against either defendant for a real estate commission. Plaintiff solely relied upon her cause of action sounding in fraud against defendant Rosenbaum for alleged misrepresentation made to her by him.

Real estate brokers are licensed as such only after they have demonstrated a knowledge of the laws relating to real estate transactions. (Bus. & Prof. Code, §§ 10153, 10153.3.)

As a licensed real estate broker, plaintiff was presumed to know that real estate commission contracts are invalid and unenforceable unless in writing and subscribed by the person to be charged. (*Pacific Southwest Dev. Corp.* v. *Western Pac. R.R. Co.*, 47 Cal.2d 62, 70 [301 P.2d 825]; *Franklin* v. *Hansen*, 59 Cal.2d 570, 575 [30 Cal.Rptr. 530, 381 P.2d 386]; *Allen* v. *Powell*, 248 Cal.App.2d 502, 512 [56 Cal.Rptr. 715]; *Straughter* v. *Safety Sav. & Loan Assn.*, 244 Cal.App.2d 159, 163 [52 Cal.Rptr. 871].)

A licensed real estate broker must be deemed to know that the agreement for his commission must be in writing. (*Jaffe* v. *Albertson Co.*, 243 Cal.App.2d 592, 603 [53 Cal.Rptr. 25]; *Kroger* v. *Baur*, 46 Cal.App.2d 801, 804 [117 P.2d 50]; see also *Ira Garson Realty Co.* v. *Avedon*, 246 Cal.App.2d 624, 629 [55 Cal.Rptr. 52].) Such a contract is one for the employment of the broker as agent to buy or sell real estate. (Civ. Code, § 1624; c.f. Code Civ. Proc., § 1973, subd. 5; *Franklin* v. *Hansen, supra*, 59 Cal.2d 570, 576.)

Not only must the agreement be in writing but must be one naming the broker. Such a writing may describe the property and the percentage of commission which will be paid

upon the sale, but if it does not name the broker to whom the commission will be paid, it is unenforceable. (*Morrill* v. *Barneson,* 30 Cal.App.2d 598, 599-603 [86 P.2d 924]; *Franklin* v. *Hansen, supra; Augustine* v. *Trucco,* 124 Cal.App.2d 229, 238 [268 P.2d 780]; *Herzog* v. *Blatt,* 80 Cal.App.2d 340, 342-343 [180 P.2d 30].)

Plaintiff alleged and testified she relied upon the representation of defendant that the minutes of the Corporation provided a 5 percent commission would be paid to the broker who made the sale or procured the buyer. The court found she justiciably relied upon these representations, made efforts to sell the land and incurred expenses during her efforts. There was no evidence and thus no finding that defendant represented to plaintiff that the corporate minutes named her as the real estate broker.

Since plaintiff was a licensed real estate broker and had been since 1948 and was deemed to know that a contract of employment of her as a broker to sell the land must be in writing to be enforceable, it is difficult to conclude she had a right to rely upon the representations. (*Kroger* v. *Baur, supra,* 46 Cal.App.2d 801, 803-804; *Beach* v. *Arblaster,* 194 Cal.App.2d 145, 163 [14 Cal.Rptr. 854].) The representations made to her did not fulfill the requirements of an enforceable writing. The representation only informed her that the minutes of the Corporation provided for a 5 percent commission to a broker who made the sale. Plaintiff was bound to know because of her experience in the real estate field and because of her required knowledge of real estate law that even had there been corporate minutes in the verbiage as represented to her, she could not have a cause of action for a real estate commission against the defendant Corporation.

Although plaintiff testified and the court found that defendant had represented to plaintiff she was legally protected by the minutes of the Corporation and he would compel the Corporation to pay the commission if she sold the property, plaintiff knew that at best defendant owned only 30 percent of the stock of the Corporation, and, therefore, did not control the Corporation. Plaintiff knew the other shareholders and directors of the local Corporation. With this knowledge, plaintiff was not justified in relying upon the defendant's statements. (*Miller* v. *City & County of San Francisco,* 187 Cal.App.2d 480, 483 [9 Cal.Rptr. 767]; *Champion* v. *Woods,* 79 Cal. 17 [21 P. 534, 12 Am.St.Rep. 126].) She was an experienced businesswoman and is presumed to

have known these statements could not be relied upon as a guaranty of her legal rights. Further, as a licensed real estate broker, she was conversant with the law that since the contract of employment as broker had to be in writing, defendant could not vary or change the effect of that law by representing he, as agent for the Corporation, was employing her to sell the land.

■ Plaintiff attempts to overcome these legal difficulties by the postulation that there was a confidential relationship between plaintiff and defendant and past conduct of defendant in paying commissions without a written contract requires us to affirm the trial court. The existence of such a relationship is difficult to postulate, see *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 21 [193 P.2d 728], but assuming there was a fiduciary relationship between plaintiff and defendant despite their conduct in and marital agreements dealing with their properties, estates, business and income, such relationship does not justify reliance where the existence of the relationship is entirely immaterial to the consummation of the transaction involved. (23 Cal.Jur.2d, Fraud and Deceit, § 31, p. 78; *Spinks* v. *Clark,* 147 Cal. 439, 449 [82 P. 45].)

It is noted that the authority for the exercise of power of eminent domain proceedings arises out of statutory authority. (17 Cal.Jur.2d, Eminent Domain, §§ 1-4.) This procedure is of common knowledge and is easily and legally distinguishable from a sale of real property effected between willing vendor and purchaser.

■ Factually and regardless of the reason, the school district filed a complaint in eminent domain against the Corporation property. The school district had the authority to purchase property but did not exercise the authority. The finding that plaintiff procured the purchaser is not founded upon the evidence. (See *Preston* v. *Carnation Co.,* 196 Cal. App.2d 43, 46-47 [16 Cal.Rptr. 240]; *Snell* v. *Wickersham,* 140 Cal.App.2d 812 [295 P.2d 918].)

Severing the concluded overtone that plaintiff's action is a subterfuge to circumvent the statutory requirement that an employment contract of a real estate broker must be in writing to be enforceable from a cause of action in tort for fraud, plaintiff has failed to sustain her burden of proof of fraud.

Judgment reversed.

Kerrigan, J., concurred.