RFD PUBLICATIONS, INC.,
Plaintiff-Petitioner/Appellant,

v.

OREGONIAN PUBLISHING CO., and
Newhouse Newspapers,
Defendants-Respondents/Appellees.

No. 84–3694.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 1984.

Decided Dec. 20, 1984.

Albert R. Malanca, Tacoma, Wash., Doug Ragen, Portland, Or., for plaintiff-petitioner/appellant.

John Hanson, Los Angeles, Cal., Wayne Hilliard, Portland, Or., for defendants-respondents/appellees.

Before SKOPIL, FARRIS, and BEEZER, Circuit Judges.

FARRIS, Circuit Judge:

BACKGROUND

This case is before us on interlocutory appeal from the grant of partial summary judgment in favor of Oregonian Publishing Co. and the denial of RFD Publications'. cross motion for summary judgment. The only issue on appeal is whether Oregonian's sale of advertising space in a section of its newspaper that is mailed to nonsubscribers constitutes the sale of a single service or two distinct services for the purposes of predatory pricing analysis. The district court held that only one service is present. We have jurisdiction pursuant to 28 U.S.C. § 1292(b).

RFD publishes *This Week,* a weekly magazine carrying large amounts of advertising that is mailed free of charge to substantially all households in the metropolitan Portland area. Oregonian publishes *The Oregonian,* a major daily newspaper in the metropolitan Portland area. The Wednesday edition of *The Oregonian* includes a section entitled "FOODday," which, in a slightly altered format, is mailed to nonsubscribers together with a supplement called "Update." Oregonian charges advertisers who purchase space in FOODday a single price that is slightly higher than that charged for space in the other sections of *The Oregonian,* which are not mailed to nonsubscribers. Oregonian does not sell advertising space only in the version of FOODday that is mailed to nonsubscribers, and advertisers have not indicated any interest in placing advertisements only in the mailed version of FOODday.

RFD brought this antitrust action, alleging that Oregonian violated Section 2 of the

Sherman Act, 15 U.S.C. § 2, by predatorily pricing advertising space in FOODday. RFD asserts that advertising in the mailed and delivered versions of FOODday are two separate services for the purposes of antitrust analysis and that Oregonian's rates for advertising in the mailed version are below its costs of providing that service.

STANDARD OF REVIEW

In reviewing a grant of summary judgment, our task is identical to that of the district court. The district court's grant of summary judgment will be affirmed if, viewing the evidence and the inferences therefrom in the light most favorable to the party opposing the motion for summary judgment, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Jewel Companies v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555, 1559 (9th Cir.1984); *Prestin v. Mobil Oil Corp.*, 741 F.2d 268, 269–70 (9th Cir.1984).

DISCUSSION

RFD concedes that "advertisers were not interested in purchasing the service of delivering ads [in FOODday] to nonsubscribers if they could not at the same time purchase the complementary service of delivering ads to subscribers" to *The Oregonian*, but argues that this fact is "totally irrelevant." In fact, it is dispositive of the issue presented on appeal.

In *Janich Bros., Inc. v. American Distilling Co.*, 570 F.2d 848 (9th Cir.1977), *cert. denied*, 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978), we held that to be considered a separate product for the purposes of predatory pricing analysis, "the product must be such that if predatorily priced, rivals are likely to be driven out of the market or excluded, allowing the firm to raise prices." *Id.* at 856. Plaintiff in *Janich*, a rectifier of alcoholic beverages, argued that half gallons of gin or vodka constituted a separate product from other sizes. We held that half gallons did not constitute a separate product because chain retailers tended to buy gin and vodka in either the full line of sizes or in the most popular fifth and quart sizes. Only predatory pricing of the full line or fifths and quarts was likely to drive competitors out of the market.

As in *Janich*, purchasers' preferences determine the relevant product in this case. RFD concedes that advertisers do not want to purchase advertising space exclusively in the mailed version of FOODday. Advertisers who purchase space in FOODday seek total market coverage, the same service that is provided by *This Week*. Like the retailers in *Janich*, who were concerned with the prices of either the full line of sizes or fifths and quarts but were not concerned with the price of half gallons alone, the advertisers in this case are concerned with the price of total market coverage, not with the price of reaching only those who do not subscribe to *The Oregonian*. Oregonian could drive rivals like RFD out of the market only by predatorily pricing total market coverage, that is, advertising space in both versions of FOODday. Because the price of advertising only in the mailed version of FOODday is of no interest to advertisers, predatory cutting of it could not drive competitors from the market. Advertising in the mailed version of FOODday is not a separate service for the purpose of predatory pricing analysis. *See also Jefferson Parish Hospital District No. 2 v. Hyde*, — U.S. —, 104 S.Ct. 1551, 1563, 80 L.Ed.2d 2 (1984) (tying arrangement cannot exist unless there is sufficient demand for allegedly distinct services to identify distinct product markets).

AFFIRMED.