**Irving H. LEVIN and Harold A. Lipton, Plaintiffs/Appellants,**

v.

**Philip H. KNIGHT, Defendant/Appellee.**

No. 84–5855.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1985.

Decided Jan. 13, 1986.

Marianne Goodwin, Lawrence B. Steinberg, Stuart A. Benjamin, Wyman, Bautzer, Rothman, Kuchel, & Silbert, Los Angeles, Cal., for plaintiffs/appellants.

Stephen A. Kroft, Frederic A. Schreyer, Karen E. Garver, Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for defendant-appellee.

## OPINION

Before BARNES and REINHARDT, Circuit Judges and GILLIAM,* District Judge.

* Honorable Earl B. Gilliam, United States District Judge, Southern District of California, sitting by designation.

GILLIAM, District Judge:

### 1. Background [1]

Irving H. Levin and Harold A. Lipton, plaintiffs below and former owners of the San Diego Clippers professional basketball franchise, appeal from a grant of summary judgment for defendant Philip Knight in this action for breach of contract and fraud arising from Knight's alleged agreement to purchase the Clippers.

The district court granted summary judgment on the contract claim against the plaintiffs on the basis that a three-page written memorandum detailing the understanding of the parties was insufficient, as a matter of law, to overcome the requirements of the statute of frauds. The court also granted summary judgment against the plaintiffs on their fraudulent misrepresentation claim, since under California law current at the time of the court's decision, the action for fraudulent misrepresentation could not be maintained upon an agreement unenforceable under the statute of frauds.

### 2. Standard of Review

Summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

We review the district court's decision *de novo* to determine whether there exist any genuine issues of material fact and whether the district court correctly applied the substantive law in ruling on the motion. *Deukmejian v. United States Postal Service*, 734 F.2d 460, 462 (9th Cir.1984).

The district court's grant of summary judgment will be affirmed if, viewing the evidence and the inferences therefrom in the light most favorable to the party opposing the motion, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *R.F.D. Publications, Inc. v. Oregonian Publishing Co.*, 749 F.2d 1327, 1328 (9th Cir.1984).

### 3. Summary Judgment

We hold that the district court's grant of summary judgment on the contract claim was inappropriate.

Under California law, the lengthy written memorandum here would be sufficient to comply with the statute of frauds if all disputed matters were resolved in plaintiffs' favor. The written memorandum indicates sufficiently the few terms deemed essential as a matter of law by California courts to satisfy the statute of frauds requirements: the subject matter, the price, and the party against whom enforcement is sought. Further, there appear to be genuine issues of fact as to whether specific allocation of various debts and liabilities were considered essential by the parties.

As the California Supreme Court stated in its most recent discussion of the California statute of frauds:

> It is important to remember that "the primary purpose of the statute [of frauds] is evidentiary, to require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made ... [The] requirement of a memorandum is read in light of the dispute which arises and the admissions of the party to be charged; there is no need for evidence on points not in dispute. (emphasis and citations omitted)

*Seaman's Direct Buying Service v. Standard Oil*, 36 Cal.3d 752, 764, 686 P.2d 1158, 1164, 206 Cal.Rptr. 354, 360 (1984).

This court finds the case of *Seaman's* persuasive, and notes that other California cases have resolved this issue in favor of plaintiffs where far fewer significant terms

---

**1.** The majority prepared the disposition of this case as a memorandum, since we do not believe it to be appropriate for publication under Ninth Cir.R. 21(b). Our dissenting colleague has called for its publication under subsection (6) of that rule, which allows the author of a dissent or concurrence to request publication of a disposition.

or conditions were set forth in the disputed writing.

The issues presented as to the statute of frauds governing securities transactions are overcome by the finding that there was no dispute as to the amount of stock involved. All parties understood that the agreement was for transfer of the Clippers as an entire unit, and that if a stock transaction were eventually to transpire, then all of said stock would be transferred.

■ The grant of summary judgment against the plaintiffs on the fraud claim is also reversed. *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 216 Cal.Rptr. 130, 702 P.2d 212 (1985) now permits an action for fraudulent misrepresentation upon an alleged oral agreement or upon an agreement otherwise unenforceable under the statute of frauds. Upon remand, the fact-finder should be instructed that it may consider the plaintiffs' tort claim, even if it does not find that the Levin and Knight memorandum constitutes a valid contract.

The court finds that its determination as to these issues is dispositive, and therefore finds it unnecessary to address the remaining issues presented on appeal.

REVERSED AND REMANDED for further proceedings.

BARNES, Senior Circuit Judge, concurring in part, dissenting in part:

I concur in that part of the majority opinion which reverses the grant of summary judgment against Levin and Lipton on their fraud claim against Knight. The reversal on this claim is necessary because of the recent California Supreme Court decision, *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 702 P.2d 212, 216 Cal.Rptr. 130 (1985), which had not been decided during the pendency of this action before the district court.

In *Tenzer*, the latest unanimous ruling of the Court, a plaintiff may maintain an action for fraudulent misrepresentation even where an agreement is oral or is otherwise made unenforceable by the statute of frauds. Thus, the California Supreme Court expressly overruled the line of prior California cases, followed by the district court, which "held that an action for fraud cannot be maintained where the allegedly fraudulent promise is unenforceable as a contract due to the statute of frauds." *Tenzer*, 39 Cal.3d at 29, 702 P.2d at 218, 216 Cal.Rptr. at 136. The Court has now adopted the view of the Restatement Second of the Law of Torts, that "a misrepresentation of one's intention is actionable even 'when the agreement is oral and made unenforceable by the statute of frauds, or when it is unprovable and so unenforceable under the parol evidence rule.'" *Id.* 39 Cal.3d at 29, 702 P.2d at 218–19, 216 Cal. Rptr. at 136.

I must, however, respectfully dissent from the majority holding that the parties entered into a valid and binding contract, and that the three-page memorandum at issue herein contains all material terms and satisfies the provisions of the California Statute of Frauds. I would affirm the district court's grant of summary judgment in favor of Appellee Knight.

Appellants Irving H. Levin ("Levin") and Harold A. Lipton ("Lipton"), former owners of the San Diego Clippers Basketball Club, Inc. ("Clippers"), a professional basketball franchise, entered into negotiations with Philip H. Knight ("Knight"), for the sale of the franchise. Levin and Knight met on December 3, 1980, to personally discuss and negotiate for the sale of the Clippers. Appellant Lipton was not present at this meeting. After the meeting, Knight and Levin both intialed a three-page handwritten memorandum which Levin had drafted during their discussion.[1] This memorandum outlined and incorporat-

---

1. This "memorandum" is variously referred to by appellants as a handwritten "purchase contract" memorializing Knight's agreement to purchase the Clippers, and by the appellee as an "oral contract" or "alleged contract" memorial- ized in three pages of notes handwritten by Levin. For purposes of the discussion herein, I will refer to this memorandum as the "alleged contract."

ed *some* of the terms of their oral discussion.

Thereafter, on December 13, 1980, the attorney for Levin and Lipton forwarded to Knight's attorney a letter and an attached draft of a *proposed agreement* between Knight, Levin and Lipton with respect to Knight's acquisition of the Clippers. This letter, drafted by Levin and Lipton's attorney, clearly supports the fact that the parties had *not* entered into a contract. They were merely negotiating the sale at their meeting of December 3, 1980, and the alleged contract prepared by Levin was an attempt to finalize the negotiations so that they could enter into a contract representing an agreed-upon expression of the parties' intentions. The letter stated that the draft of the proposed sales agreement was being sent for Knight's approval, and that Levin and Lipton "have not yet reviewed this document and the draft is therefore subject to their approval." In addition, although the letter stated that the draft of the proposed agreement "attempted to follow all of the deal points which were agreed to in the meeting of December 3, 1980," the letter indicated that "there is now a stock transaction," a material term which was never incorporated into Levin's December 3, 1980 handwritten memorandum. Two days after this letter and draft of the proposed agreement were sent, on December 15, 1980, Knight informed Levin by telephone of his decision not to purchase the Clippers.

Levin and Lipton filed this action in the district court on December 22, 1981, alleging breach of contract and fraud. Knight filed a motion for summary judgment on January 16, 1984, and the district court granted the motion and entered its findings of fact and conclusions of law on March 27, 1984.

### I.

In applying a *de novo* standard of review to a grant of summary judgment, we must view the evidence in the light most favorable to the party against whom the summary judgment was granted. *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1352 (9th Cir. 1984). Our task is identical to that of the trial court, and we must determine from the evidence which was presented below, whether "there is any genuine issue of fact in dispute and whether the moving party is entitled to judgment as a matter of law." *Jewel Companies, Inc. v. Pay Less Drug Stores Northwest, Inc.*, 741 F.2d 1555, 1559 (9th Cir.1984), *citing M/V American Queen v. San Diego Marine Construction Co.*, 708 F.2d 1483, 1497 (9th Cir.1983). Applying this standard, I must agree with the district court that (1) the memorandum betwen the parties fails to sufficiently evidence all of the essential elements of the agreement, thereby precluding the existence of a totally integrated writing, (2) parol evidence cannot be introduced to explain material terms which have been omitted from the memorandum, and (3) equitable estoppel does not bar a statute of frauds defense since appellants did not substantially change their position in reliance upon the representation of the appellee.

### II.

#### A. *Omission of Material Terms*

Under California law, which governs this diversity case, certain types of contractual agreements must comply with the statute of frauds and be in writing in order to be valid and binding upon the parties. The purpose of requiring such agreements to be in writing in order to be enforceable, is "to prevent fraud and perjury ... by requiring ... the more reliable evidence of some writing signed by the party to be charged," *Riley v. Bear Creek Planning Committee*, 17 Cal.3d 500, 509, 551 P.2d 1213, 131 Cal.Rptr. 381, 388 (1976) (in bank), and "to require reliable evidence of the existence and terms of the contract and *to prevent enforcement* through fraud or perjury *of contracts never in fact made* ...." *Seaman's Direct Buying Service v. Standard Oil Co. of California*, 36 Cal.3d 752, 764, 686 P.2d 1158, 1164, 206 Cal.Rptr. 354, 360 (1984) (in bank).

Since the agreement at issue in this appeal is one subject to the provisions of the statute of frauds, it must be in writing. California has created by statute, several statute of frauds provisions which apply, depending on the classification of the contract in question, and their requirements differ depending on the type of contract which they govern.[2]

Although an agreement which is required by the statute of frauds to be evidenced by a written note or memorandum need not be a formal contract drafted to be technically specific, nor must it contain every detail of an agreement, *see e.g. Munoz v. Kaiser Steel Corp.*, 156 Cal.App.3d 965, 976, 203 Cal.Rptr. 345, 351 (1984), it must be sufficiently specific so that a court "can plainly determine from the memorandum the identity of the parties to the contract, the nature of its subject matter, and its essential terms." *Kaneko v. Okuda*, 195 Cal.App.2d 217, 225, 15 Cal.Rptr. 792, 800 (1961). This, then, requires the writing itself to include the essential terms, since "[t]he sufficiency of a writing to satisfy the statute of frauds can not be established by *evidence which is extrinsic to the writing itself.*" *Franklin v. Hansen*, 59 Cal.2d 570, 571, 381 P.2d 386, 388, 30 Cal.Rptr. 530, 532 (1963) (in bank) (emphasis added).

The majority holds that "[t]he written memorandum indicates sufficiently the few terms deemed essential as a matter of law by California courts to satisfy the statute of frauds requirements: the subject matter, the price, and the party against whom enforcement is sought." (Majority opinion at p. 3). It relies upon *Seaman's Direct Buying Service v. Standard Oil Co. of California, supra*, to support that proposition. However, the court in *Seaman's* based its finding that the document in question satisfied the statute of frauds on the fact that all the "essential terms" of the contract were contained in the writing. *Id.*, 36 Cal.3d at 763, 206 Cal.Rptr. at 359, 686 P.2d at 1163. This is distinguishable from the case before us, where the written document in question has omitted several material or "essential terms."

Although I agree with the majority that as a matter of law by California courts the subject matter and the price and the parties are essential to the written memorandum evidencing the contract, I cannot agree that all of these terms have been included in the memorandum, and those which appear have not been included with sufficient specificity.

First, not only was Lipton present at the December 3, 1980 meeting, but his name does not appear in the alleged contract. Second, although there is evidence in the record that the parties had orally discussed Knight's purchase of Levin and Lipton's

---

2. The parties agree that three different statutes of frauds provisions apply here: (1) Cal.Civ. Code § 1624(4) (general statute of frauds provision requiring some note or memorandum thereof, in writing and subscribed by the party to be charged in order for a contract for the leasing for a longer period than one year, or for sale of real property or some interest therein, to be valid), (2) Cal.Comm.Code § 1206 (contract for sale of personal property whose value is in excess of $5000 must be in writing, indicating a defined or stated price, reasonably identifying the subject matter, and signed by the party against whom enforcement is sought), and (3) Cal.Comm.Code § 2201 (contract for sale of goods for the price of $500 or more unenforceable unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought).

In addition, there is a dispute as to whether Cal.Comm.Code § 8319 is applicable. Knight asserts that this statute of frauds provision, requiring a contract for the sale of securities to be in writing signed by the party against whom enforcement is sought, indicating the sale of a stated quantity of described securities at a defined or stated price, is applicable to this case. Levin and Lipton, on the other hand, challenge its applicability. Inasmuch as counsel for Levin and Lipton stated in his letter of December 13, 1980 that the purchase involved a stock transaction, this statute of frauds section is applicable.

Although California case law generally fails to distinguish between the various statute of frauds, and the majority has failed to make this distinction in its disposition in this case, the distinction between these provisions is important. I shall therefore discuss the effects of the several applicable statute of frauds as they apply to the sufficiency of the written memorandum in question.

stock ownership, the alleged contract of December 3, 1980, is void of any reference to any type of stock transaction. The materiality of the stock acquisition is further evidenced by the December 13, 1980 letter by Levin's attorney, which specifically states that the sale involves a stock transaction.[3] Thus, Cal.Comm.Code § 8319(a) is applicable, and requires a contract for the sale of securities to be in writing to be enforceable. Since the memorandum omits any reference to the stock acquisition, it fails to satisfy the statute of frauds and is therefore unenforceable.[4]

Third, even assuming *arguendo*, that the statute of frauds governing the sale of securities is inapplicable, the statute of frauds provisions governing the sale of the Clippers' assets must be applied, and the memorandum fails to comply. Since the sale of the lease involves the sale of an interest in real property, Cal.Civ.Code § 1624(4) is applicable. This section requires a note or memorandum to be in writing and subscribed by the party to be charged. In addition, "[t]here is a settled rule of law that a note or memorandum of a contract for a sale of land must identify by *name or description* the parties to the transaction, a seller and a buyer." *Cisco v. Van Lew*, 60 Cal.App.2d 575, 579, 141 P.2d 433, 437 (1943) (emphasis added). "The requirement of certainty as to the agreement made in order that it may be specifically enforced extends not only to its subject matter and purpose, but *to the parties*, to the consideration and even to the time and place of performance, where these are essential." *Id.* (citation omitted).

However, the identity of the parties is not sufficiently defined in the alleged contract. Although it makes several references to "seller" and "buyer," the alleged contract of December 3, 1980 makes no reference to either "sellers" or "buyers" in the plural, and neither Levin nor Lipton, is specifically named therein. Not only does the alleged contract fail to identify the sellers, but it identifies the buyer, Knight, only once, and this reference is to "Knight, et al." Thus, the sellers are not identified and the buyer(s) is not identified with sufficient specificity to comply with the statute of frauds. Since the statute of frauds requires the material terms to be stated in

---

**3.** The majority rejects as inapplicable, the argument that the statute of frauds covering sale of securities, requires such sale to be in writing. In dismissing this argument, they state that "[t]he issues presented as to the statute of frauds governing securities transactions are overcome by the finding that there was no dispute as to the amount of stock involved. All parties understood that the agreement was for transfer of the Clippers as an entire unit, and that if a stock transaction were eventually to transpire, then all of said stock would be transferred." (At p. 788.) While it may be true that all of the stock would be transferred, the fact that stock is sold is sufficient to bring such a transfer under the statute of frauds, requiring a writing.

**4.** The facts of a recent United States Supreme Court case, decided after oral argument to this court in this case, can be analogized to the facts here. In *Landreth Timber Co. v. Landreth,* — U.S. —, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985), the respondents owned all of the stock in a business which they sold to the petitioner. After the acquisition was completed, the business did not meet the expectations of the petitioner, who sold the business at a loss and subsequently filed suit seeking rescission of the sale of stock and damages, alleging, in part, violation of federal securities laws. The district court granted summary judgment, finding that the transaction was a so-called "sale of business," and this Circuit affirmed. In holding that the transaction involved was a stock transaction and not a "sale of business" transaction, the Supreme Court noted that where the transaction is clear on its face, "there is no need ... to look beyond the characteristics of the instrument to determine whether the Acts apply." *Landreth,* 105 S.Ct. at 2303.

In the case before us, Levin's attorney stated in his December 13, 1980 letter that the sale involved a stock transaction. Thus, regardless of the fact that the sale may have included, in part, the sale of assets, leases and other personal property, it is clear from its face that the sale involved the stock transaction, and this stock transaction was a material part of the contract. As such, it falls under the statute of frauds, requiring that it be evidenced in writing, and therefore should have been included in the alleged contract of December 3, 1980.

With respect to the *Landreth* case, I also note that although Knight raised a federal securities defense below, the district court did not reach the merits of this defense because it found the statute of frauds defense raised by Knight to be dispositive. On appeal, no federal securities issues have been raised.

the writing with sufficient certainty, *see Skirball v. RKO Radio Pictures, Inc.*, 134 Cal.App.2d 843, 864, 286 P.2d 954 (1955), and the parties to a contract constitute a material term, *see Burge v. Krug*, 160 Cal. App.2d 201, 205, 325 P.2d 119, 123 (1958), the alleged contract fails to comply with the statute of frauds.

In addition to the parties not being identified with reasonable certainty, the lease for the real property is not described in any manner in the Levin memorandum, and "[t]o be sufficient, the required writing must be one 'which states *with reasonable certainty*, (a) each party to the contract * * * and (b) the land, goods or other subject-matter to which the contract relates, and (c) *the terms and conditions of all the promises* constituting the contract and by whom and to whom the promises are made.'" *Burge v. Krug*, 160 Cal.App.2d at 205, 325 P.2d at 123. "Unless the writing, considered alone, expresses the essential terms with sufficient certainty to constitute an enforceable contract, it fails to meet the demands of the statute." *Id.*

Thus, the failure to identify the parties with specificity, or to include any of the terms of the lease of real property in the writing also causes the Levin memorandum to fail under the statute of frauds.

### B. *Admissibility of Parol Evidence*

Appellants argue that extrinsic evidence should be admitted to explain the meaning of terms used in the written memorandum. Based upon the record before us, it is clear that oral evidence would have to be proffered in order to explain not only material terms which have been omitted from the written memorandum, but also to show the parties' intent to contract. However, although parol evidence is admissible to explain ambiguities in the *terms* of a writing, *see Riley v. Bear Creek Planning Committee*, 17 Cal.3d at 508, 131 Cal.Rptr. at 387, 551 P.2d at 1219, "[t]he sufficiency of the writing to satisfy the statute of frauds can not be established by evidence which is extrinsic to the writing itself." *Franklin v. Hansen*, 59 Cal.2d at 572, 30 Cal.Rptr. at 532, 381 P.2d at 388. Where material terms are omitted from the writing, "recovery may not be predicated upon parol proof of material terms omitted from the written memorandum, *even though the oral understanding is entirely consistent with, and in no way tends to vary or contradict, the written instrument.*" *Burge v. Krug*, 160 Cal.App.2d at 206, 325 P.2d at 123. Under the parol evidence rule, "the act of executing a written contract, whether required by law to be in writing or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument. Extrinsic evidence cannot be admitted to prove what the agreement was, not for any of the usual reasons for exclusion of evidence, but because *as a matter of law the agreement is the writing itself.*" *BMW of North America v. New Motor Vehicle Bd.*, 162 Cal.App.3d 980, 988, 209 Cal.Rptr. 50, 57 (1984) (emphasis added) (citing *Tahoe Nat'l Bank v. Phillips*, 4 Cal.3d 11, 22–23, 480 P.2d 320, 92 Cal.Rptr. 704). Thus, since the alleged contract omits several fundamental, material terms, parol evidence is inadmissible to explain or add those terms.

### C. *Equitable Estoppel as a Bar to the Statute of Frauds*

Lastly, appellants argue that the oral agreement into which the parties entered is binding on the appellee based on the doctrine of equitable estoppel. In order for equitable estoppel to apply as a bar to a statute of frauds defense, it is necessary that assertion of the statute of frauds would perpetrate rather than prevent a fraud. *See e.g. Lockwood v. Smigel*, 18 Cal.App.3d 800, 804, 96 Cal.Rptr. 289, 291 (1971). The rule of law by which California courts still abide, regarding the application of equitable estoppel, is that estoppel will be applied to prevent fraud where "[s]uch fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract." *Monarco v. LoGreco*, 35 Cal.2d 621, 623–24, 220 P.2d 737, 739 (1950).

Levin and Lipton argue that not only did they materially change their position in reliance on the contract, but that they also suffered unconscionable injury as a result of Knight's alleged breach. If this were true, they would meet both requirements necessary for equitable estoppel to apply. However, California law as applied to the facts of this case does not support their argument.

After allegedly entering into an oral contract on December 3, 1980, Levin and Lipton claim that they took the Clippers off the market and cut off all negotiations with other parties. This action was in response to Knight's purported representation that he would purchase the team. Knight rejected in writing, any intent to purchase the Clippers on December 15, 1980, and as the district court correctly points out, this twelve-day period does not provide a sufficient period of time in which to justifiably change one's position in reliance on the oral promise. See Oren Realty & Development Co. v. Superior Court, 91 Cal.App.3d 229, 236–37, 154 Cal.Rptr. 97, 100 (1979) (sixteen days was an insufficient period to interfere with effective shopping for other real property, and equitable estoppel would not apply). Appellants could have immediately, upon notice from Knight of his intention not to purchase the Clippers, re-entered into negotiations with other interested parties. However, they failed to do so. Thus, I agree with the district court that as a matter of law, Levin and Lipton failed to show that they materially changed their position to their detriment during the twelve-day period between Knight's alleged agreement to purchase the Clippers and his rejection of this alleged offer to purchase the team.

Appellants' argument that they suffered an unconscionable injury as a result of Knight's alleged breach is equally without merit. Levin and Lipton argue that they incurred considerable legal and accounting expenses as a result of their reliance upon Knight's promise, and that as a result of his alleged breach, they were forced to sell the Clippers at an amount which was considerably less than they would have received from Knight. I would reject this argument. "Loss of bargain, and damages resulting therefrom, do not of themselves estop a [party] from relying on the Statutes of Frauds." Oren Realty, 91 Cal. App.3d at 236, 154 Cal.Rptr. at 100 (citations omitted). Merely because Levin and Lipton obtained less for the team than they would have received from Knight does not justify the assertion of equitable estoppel as a bar to a statute of frauds defense. See Caplan v. Roberts, 506 F.2d 1039, 1041 (9th Cir.1974) (per curiam). The loss of bargain of which Levin and Lipton complain is merely one of the risks of doing business.

With respect to the attorneys' fees and accounting costs incurred in their attempt to consummate the sale, the district court properly found these to be "nothing more than transaction costs that are a normal part of the negotiating process in major transactions such as this one." Conclusions of Law at 8 (citing Irving Tier Co. v. Griffin, 244 Cal.App.2d 852, 865, 53 Cal. Rptr. 469, 477–78 (1966)).

III.

In view of the foregoing, I would affirm the district court's grant of summary judgment for the appellee on the breach of contract claim. In reviewing the record before us, I am unable to find any genuine issue of material fact in dispute, since the alleged contract omits material terms required to satisfy the statute of frauds, and therefore fails as a matter of law. Since appellants have failed to show that they materially changed their position in reliance on the alleged contract, or that they suffered unconscionable injury as a result of the appellee's purported breach, equitable estoppel could not be invoked to prevent a statute of frauds defense. In addition, as a matter of law, parol evidence is inadmissible to explain those material terms which were omitted from the alleged contract upon which Levin and Lipton rely.