[No. B004118. Second Dist., Div. Three. Feb. 27, 1986.]

RADER COMPANY, INC., Plaintiff and Appellant, v.
WILLIAM F. STONE, JR., Individually and as Trustee, etc., et al.,
Defendants and Respondents.

RADER COMPANY, INC., Plaintiff and Appellant, v.
PACIFIC SIERRA RESEARCH CORPORATION,
Defendant and Respondent.

**COUNSEL**

Greenberg, Hennigan & Mercer, J. Michael Hennigan and Jeanne E. Irving for Plaintiff and Appellant.

Carl E. Kohlweck, Goldfarb, Sturman & Averbach and Martin B. Snyder for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant The Rader Company, Inc. (Rader) appeals from orders of dismissal following the sustaining of demurrers without leave to amend interposed by defendants and respondents William F. Stone, Jr., and the Stone Family Trust (collectively, Stone) and Pacific Sierra Research Corporation (PSR), to various causes of action, and the denial of its motion for reconsideration.

Because the complaint adequately sets forth allegations, and appends memoranda that show on their face authority for Rader to procure PSR as a lessee for Stone for a commission subscribed by Stone's agent, and employment of Rader to act as a broker for PSR, the orders of dismissal are vacated.

### FACTUAL AND PROCEDURAL BACKGROUND

This is an action to recover a broker's commission allegedly due Rader for its services in procuring PSR as a tenant for Stone's real property located at 12340 Santa Monica Boulevard, Los Angeles, California (the property).

In its second amended complaint filed August 25, 1982, Rader alleged the following pertinent facts: Rader is a licensed real estate broker and Stone is the owner of the property. In June 1981, Rader attended an open house conducted by Stone at the property site for the purpose of soliciting brokers to procure tenants for the property on a 10-year lease. At the open house, Stone distributed an offering brochure that set forth, inter alia, a schedule of realtors' commissions. Stone subsequently distributed an update that again made a reference to commissions.

In early December 1981, Rader advised Nancy Mueller (Mueller), Stone's agent and representative, by telephone that Rader wished to bring a prospective tenant, PSR, to view the property. Mueller acknowledged Rader would be entitled to a broker's commission if and when PSR leased the premises. Rader took PSR to view the property, and completed Stone's client-realtor registration form, identifying Rader as the broker, and PSR as the prospective lessee.

On or about January 6, 1982, PSR and Rader executed an offer to lease (lease offer) which identified Rader as broker and PSR as prospective lessee, and stated in pertinent part: "15. Lessor agrees to pay all commissions due Broker arising out of or in connection with Lessee's offer to lease, . . ., the premises. In the event Lessee executes any agreement with Lessor covering the premises without providing for the payment of commissions due Broker, Lessee agrees to pay Broker the commission due in accordance with Broker's current Schedule of Commissions . . . ."

Stone accepted PSR as a tenant, and in March 1982, Stone and PSR executed a written lease which relevantly stated: "20. BROKERS: Lessor warrants and agrees that the payment of any real estate broker commission and/or fees in connection with this lease is the sole and separate obligation of Lessor. Lessor agrees to discharge and hold Lessee harmless from any liability or expense, including attorney's fees, arising in connection with any commission due as a result of this lease."[1]

The second amended complaint contained six causes of action. The first was directed against Stone for breach of contract, and alleged the brochure,

---

[1]It is gleaned from the record that there is another separate action pending, *Greenwood & Co. v. Dr. William Stone, Jr.* (No. C 438075), involving another real estate broker suing for recovery of a commission on the same transaction. *Greenwood & Co.*'s claim has no bearing here, as this court's review is limited to whether Rader's complaint stated a cause of action. The issue of which broker, if either, is entitled to a commission, is not before this court.

update, and registration form constituted a written agreement pursuant to which Stone owed Rader a commission of not less that $144,384.[2]

The second cause of action was directed against PSR for breach of contract, and alleged PSR owed Rader a commission based on the lease offer.

The third cause of action was directed against both PSR and Rader and sought recovery for quantum meruit/unjust enrichment. In the fourth cause of action, Rader alleged that PSR intentionally interfered with Rader's advantageous relationship and contract with Stone, and benefited as a result of obtaining the lease at more favorable terms.

Along the same lines, the fifth cause of action alleged Stone intentionally interfered with Rader's advantageous relationship and contract with PSR. Lastly, the sixth cause of action was against Stone and alleged Rader was a third party beneficiary, based on paragraph 20 of the lease.

Following hearing, the demurrers of both defendants to the second amended complaint to the first through fourth causes of action were sustained without leave to amend. As to the fifth and sixth causes of action, leave was granted to file a third amended complaint.

Rader's motion for reconsideration was denied and an order of dismissal was entered as to PSR, with no cause of action remaining against it.

Rader filed a third amended complaint against Stone. It plead causes of action based upon (1) intentional interference with prospective advantage; (2) intentional interference with contract; and (3) third party beneficiary to contract. Stone's demurrer to these causes of action was sustained without leave to amend and an order of dismissal was entered as to Stone on March 26, 1984.

## CONTENTIONS

Rader contends the appended memoranda were sufficient to comply with the statute of frauds, and the trial court erred: (1) in sustaining without leave to amend Stone and PSR's demurrers to the first four causes of action of the second amended complaint based upon breach of contract against Stone and PSR; intentional interference with contractual relations against

---

[2]Documents were appended to the complaint as follows: Exhibit A, the brochure and attached realtor's sheet; Exhibit B, the update; Exhibit C, the registration form; Exhibit D, the lease offer; and Exhibit E, the lease. There was no formal listing agreement between Rader and Stone; Rader therefore relies on these memoranda.

PSR; intentional interference with prospective advantage against PSR; and quantum meruit/unjust enrichment against both; (2) in sustaining Stone's demurrer to the causes of action against Stone in the third amended complaint for intentional interference with prospective advantage and with contract, and a third party beneficiary contract on behalf of Rader, without leave to amend; and (3) in denying the motion for reconsideration.

## DISCUSSION

### 1. *Scope of appellate review.*

■ The function of a demurrer is to test the sufficiency of a plaintiff's pleading by raising questions of law. (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 818 [164 Cal.Rptr. 264].)

The allegations in the complaint must be regarded as *true (Shaeffer* v. *State of California* (1970) 3 Cal.App.3d 348, 354 [83 Cal.Rptr. 347]), and are to be liberally construed with a view to substantial justice between the parties. (*King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].) Unless the complaint shows on its face that it is incapable of amendment, denial of leave will constitute an abuse of discretion. (*King* v. *Mortimer* (1948) 83 Cal.App.2d 153, 158 [188 P.2d 502].)

■ "[I]t will be held an abuse of discretion to sustain without leave to amend a demurrer where the complaint is not fundamentally deficient in alleging facts showing a right to some relief which can properly be given, but is only defective with respect to the manner or form in which the facts warranting relief have been pleaded." (*Katz* v. *Driscoll* (1948) 86 Cal.App.2d 313, 316 [194 P.2d 822].)

■ On appeal, the court is not concerned with a party's possible difficulty or inability in *proving* the allegations of the complaint (*Highlanders, Inc.* v. *Olsan* (1978) 77 Cal.App.3d 690, 697 [143 Cal.Rptr. 679]), but only that the party may be entitled to some relief. (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) Further, "[a]s a reviewing court we are not bound by the construction placed by the trial court on the pleadings but must make our own independent judgment thereon, even as to matters not expressly ruled upon by the trial court." (*Miller* v. *Bakersfield News-Bulletin, Inc.* (1975) 44 Cal.App.3d 899, 901 [119 Cal.Rptr. 92].)

We apply these principles in reviewing the complaint.

*2. The writings are sufficient to satisfy the statute of frauds and support the claim against Stone for breach of contract.*

a. *General principles.*

Civil Code section 1624 (section 1624) states in pertinent part: "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] . . . . [¶] (d) An agreement authorizing or employing . . . [a] broker, . . . to procure, introduce, or find . . . a lessee or lessor of real estate where the lease is for a longer period than one year, for . . . a commission; . . ."

■ The purpose of the statute of frauds with respect to a listing contract between a broker and an owner of realty is to protect the owner from a claim for a commission from a person never authorized to act as the owner's intermediary. (*Lathrop* v. *Gauger* (1954) 127 Cal.App.2d 754, 764 [274 P.2d 730].) The writing need not contain all the terms of the contract, and the principal requirements to satisfy the statute are that the memorandum shows the authority of the broker to act for the owner (*id.,* at pp. 764-765), and is subscribed by or on behalf of the party to be charged (*Marks* v. *Walter G. McCarty Corp.* (1949) 33 Cal.2d 814, 820 [205 P.2d 1025]).

When these requirements are met, the other terms, including the amount of commission, and even the agreement to pay the commission, may be shown by parol. (*Moore* v. *Borgfeldt* (1929) 96 Cal.App. 306, 311 [273 P. 1114].) ■ Further, while the sufficiency of a writing to satisfy the statute of frauds cannot be established by evidence which is extrinsic to the writing itself, where the writing is sufficient to satisfy the statute, parol is permissible to show the circumstances which attended its making, or to explain ambiguities on the face of the memorandum. (*Franklin* v. *Hansen* (1963) 59 Cal.2d 570, 573-574 [30 Cal.Rptr. 530, 381 P.2d 386].) Evidence of the telephone conversation between Mueller and Rader may be admitted to explain any ambiguity in the registration form's purpose or function, and to show the circumstances which attended its making.

Stone demurred to all Rader's causes of action except the third party beneficiary contract claim mainly in reliance on the statute of frauds. Stone maintains the writings are insufficient on two grounds: the memoranda do not show on their face the fact of Rader's employment, and, none of the writings is signed by the party to be charged. Obviously, there was no formal listing agreement between the parties herein and hence, the litigation.

b. *The requirement of a signed writing.*

Rader's complaint plead that Rader took PSR to view the premises, and while there, Rader filled out the registration form, which, along with other memoranda, was appended to the complaint.[3]

---

[3]Registration form:

## STONE ENTERPRISES

12340 SANTA MONICA BLVD.
LOS ANGELES, CALIFORNIA 80025
(213) 826-5100

Dr. William Stone, Jr.
President

### CLIENT – REALTOR REGISTRATION

DATE December 16, 1981

REALTOR'S NAME RICHARD HOLLMAN

BROKER'S NAME THE RADER COMPANY

ADDRESS 2999 OVERLAND AVENUE, SUITE #103

TELEPHONE NUMBER (213) 204-3333

PROSPECTIVE TENANT'S COMPANY NAME PACIFIC SIERRA RESEARCH

ADDRESS 1456 CLOVERFIELD BOULEVARD, SANTA MONICA, CA

TELEPHONE NUMBER (213) 828-7461

NAMES OF COMPANY REPRESENTATIVES AT SITE VISIT FRANK THOMAS,
RAY BRASSER, AND ALAN SHAPIRO

TYPE OF BUSINESS RESEARCH

AMOUNT OF SPACE DESIRED 32,000 SQUARE FEET

 A. ABOVE AVERAGE PARKING REQUIREMENTS – NUMBER OF
 SPACES PER THOUSAND SQ. FT. NEEDED 3 to 4

 B. ABOVE AVERAGE ELECTRICAL REQUIREMENTS UNKNOWN
 AMOUNT REQUIRED 110 VOLTS
 AMOUNT REQUIRED 220 VOLTS

 C. ABOVE AVERAGE RESTROOMS REQUIRED NONE

 D. PLUMBING REQUIRED UNKNOWN

 E. A/C REQUIRED – AMOUNT NECESSARY UNKNOWN

 F. SPACE PLANNER NEEDED? POSSIBLY

 G. ANY OTHER REQUIREMENTS? NO

STONE ENTERPRISES' REPRESENTATIVE

NANCY MUELLER DATE 12-21-81

Mueller's signature is on the registration form in the space provided for "STONE ENTERPRISES' REPRESENTATIVE NANCY MUELLER." Stone attacks the complaint for alleging "that a person named Nancy Mueller had signed by hand the Realtor Registration Form." Despite Stone's feigned ignorance of Mueller's identity, this "person" is an agent of Stone, the party to be charged, and the registration form on its face establishes the fact of her agency. In addition, the allegation of her agency in the complaint must be considered as true.

■ With regard to the subscription requirement of the statute of frauds, "[i]f one of a series of papers which appear to have some relation to the same matter is signed by the party to be charged, this is enough, as all the papers are to be considered together as forming one contract or memorandum." (*Thompson v. Walsh* (1946) 76 Cal.App.2d 188, 194 [172 P.2d 745].) Further, subscription does not require that the signature appear at the end of the instrument, nor that it be handwritten. The *name* of the party will satisfy the statutory requirement if it were *intended* as a signature, i.e., as an authentication, but not if it appears for some other purpose, as for mere identification. (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, §§ 211, 213, pp. 191-192.)

■ Here, the brochure, update and registration form all appear to be related to each other. The update did not appear in a vacuum, but was an update to the initial brochure. As for the registration form, it was referred to in the brochure, which brochure stated realtors would be registered and protected. Mueller's handwritten signature on the registration form is thus sufficient to satisfy the subscription requirement as to this set of writings.

We need not decide, therefore, whether the Stone Enterprises' imprint on the writings was intended to authenticate, or merely to identify, those documents.

Stone's contention that the signature requirement of the statute of frauds has not been complied with is without merit.

c. *The requirement of a showing of authorization or employment.*

■ The memoranda must also establish Rader's authorization or employment.

In *Franklin v. Hansen, supra,* 59 Cal.2d 570, a seller sent a broker a telegram which stated "[t]his is confirm that I will sell [the property] for 100,000 cash this offer good until noon 1-19-60. Chas. P. Hansen." (*Id.,* at pp. 571-572.) The court held that while the telegram may have been a

sufficient memorandum of an agreement to sell the property, it failed to use any words in recognition of a contractual obligation for a commission. (*Id.,* at p. 574.) Despite Stone and PSR's contentions, *Franklin* is not dispositive here, as the memoranda alleged and appended by Rader warrant the inference that the transaction would be effected through Rader's intervention.

Further, the cases that involve an owner of realty giving a broker a writing which contains *only* the terms of a sale, and on that basis hold no employment of the broker, are similarly inapposite. (See, e.g., *Hooper* v. *Mayfield* (1952) 114 Cal.App.2d 802, 807-809 [251 P.2d 330]; *Blanchard* v. *Pauley* (1949) 92 Cal.App.2d 244, 247 [206 P.2d 864]; *Kleinsorge & Heilbron* v. *Liness* (1911) 17 Cal.App. 534, 536-538 [120 P. 444].) Stone had passed the point of merely expressing a willingness to entertain offers subject to certain specified conditions, and had actively engaged the cooperation of real estate brokers *en masse* in the effort to lease the subject property. From the registration form it can be *inferred* that Stone and Rader had entered into an agreement whereby Rader would be compensated if it succeeded in procuring PSR as a tenant for Stone.

■ A long line of cases has consistently held that for a memorandum to be sufficient, it must unequivocally show on its face the *fact of employment* of the broker to act or to negotiate a sale of property for the owner. (See, e.g., *Hooper* v. *Mayfield, supra,* at p. 807; *Herzog* v. *Blatt* (1947) 80 Cal.App.2d 340, 342 [180 P.2d 30]; *Morrill* v. *Barneson* (1939) 30 Cal.App.2d 598, 603 [86 P.2d 924].)

■ However, in the instant case, the written memoranda did not provide the broker was employed to negotiate on Stone's behalf. Based on the facts as set forth in the complaint with the memoranda appended, it appears Stone envisaged the broker's role to be a very limited one; Stone's contract with Rader contemplated Rader was *to procure* a tenant.

Therefore, rather than examining whether the memoranda provided for Rader's *employment to negotiate* for Stone, the appropriate analysis is whether the writings *authorized* Rader *to procure* Stone a tenant, within the meaning of section 1624, subdivision (d).

The issue need not be enclosed within the confines of the registration form, or any single document. Surrounding memoranda, including advertising and brochures, may aid in clarifying Rader's authorization by Stone to procure a tenant. (*Seck* v. *Foulks* (1972) 25 Cal.App.3d 556, 568 [102 Cal.Rptr. 170].)

■ It is sufficient that a memorandum, "*on its face, by reasonable implication, gives the authority to [act].*" (*Id.,* at p. 567, italics added.)

To illustrate, in *Moore* v. *Borgfeldt* (1929) 96 Cal.App. 306, 308 [273 P. 1114], the writing in question did not name the agent and merely contained a recital by the seller that a " '[c]ommission all over and in excess of' " a given price would be paid. The *Moore* court held, "[i]f not expressly, [the writing] certainly impliedly gives authority to make the sale. . . . [as] the agreement to pay a commission, in itself, certainly implies authority to act." (*Id.*, at p. 310.) We hold that an authorization will be shown where the language of the writing or writings warrants " 'the *inference* that the [transaction], if in point of fact one was contemplated or intended, was to be effected through the intervention of a broker or any other third party.' " (*Morrill* v. *Barneson, supra,* 30 Cal.App.2d at p. 602, italics added.)

d. *Application here.*

Rader's complaint, with its appended exhibits, alleges Stone distributed in June 1981 to Rader and to other brokers a brochure, which included an additional realtors' sheet for information. The first page of said brochure contained the caption "Brokers Welcome." The attached realtors' sheet set forth, inter alia, the amount of commission to be paid, and further provided "[r]ealtors will be registered with client at first showing and protected."

Stone issued the update regarding the property on November 23, 1981, which again made reference to commissions. On December 16, 1981, Rader registered PSR as a prospective tenant on Stone's registration form. The form was imprinted "STONE ENTERPRISES' REPRESENTATIVE NANCY MUELLER," and signed by Mueller.

Thus, Stone, in writing, repeatedly solicited brokers at large to find a tenant which would lease the property for 10 years, with the assurance they would be protected and compensated. Relying on these written representations, Rader brought PSR as a prospective tenant, and registered PSR on Stone's registration form, in accordance with Stone's advertised procedure, and with Stone's agent subscribing the document in turn.

As no other conceivable purpose could be served by Stone's having Rader register PSR as a prospective tenant, the writings warrant drawing the inference Stone *authorized* Rader *to procure* PSR as a tenant for the property. Taken as a whole, the documents sufficiently plead as against a demurrer, adequate written memoranda between the parties authorizing Rader to proceed as it did.

Rader properly alleged a cause of action against Stone for breach of contract.

*3. Rader properly pled a cause of action against PSR for breach of contract.*

Section 1624, subdivision (d) refers to procurement of either a lessee or lessor.

██ For the reasons discussed *ante,* in connection with the sufficiency of the writings against Stone, the lease offer appended to the complaint is a sufficient memorandum to comply with the statute of frauds as against PSR. It is signed by PSR, the party to be charged.

Further, the lease offer states, "9. In consideration of the Rader Company, Inc. ("Broker") using its best efforts to locate suitable premises for Lessee, Lessee agrees that he shall use the services of Broker exclusively in connection with any and all negotiations and offers to lease or purchase the [Stone] premises for a period of one year from the date above [January 6, 1972]."

This language more than warrants the inference that PSR *authorized* Rader *to represent* it in the leasing of the property; Rader's employment by PSR is explicit on the face of the document.

It is also PSR's position that Rader cannot state a cause of action for breach of contract because PSR has complied with any duty owed Rader. PSR points to Rader's own pleading, which alleges PSR *provided* in the lease with Stone for payment of a commission: "20. Lessor . . . agrees that the payment of any real estate broker commission . . . in connection with this lease is the sole and separate obligation of Lessor."

As set forth *ante,* the *lease offer* set forth that in the event PSR executed any agreement with Stone without providing for the payment of commissions due, PSR would pay the commission. PSR contends that only by failing to make provision in the lease for payment of a commission would it become potentially liable, and that it complied with the alleged contract with Rader by including paragraph 20 in its lease with Stone. But the rest of paragraph 20 reads: "Lessor agrees to . . . hold Lessee harmless from any liability . . . arising in connection with any commission due as a result of this lease." Paragraph 20 therefore does not obligate Stone to pay Rader; it merely provides for Stone to indemnity PSR if PSR becomes liable for the commission.

Although named in the lease offer, *Rader is not named in the lease as the broker.* If it is determined Rader is not an *intended* beneficiary of the lease,

PSR has not properly provided in the lease for payment of Rader's commission by Stone.

Because the lease offer complies with the statute of frauds, and because the further allegations indicate PSR has not fulfilled its contractual obligations to Rader, the trial court erred in granting PSR's demurrer to Rader's claim for breach of contract.

4. *The remaining causes of action were properly pleaded.*

a. *The quantum meruit/unjust enrichment count withstands demurrer.*

Both Stone and PSR demurred to Rader's claim for quantum meruit/unjust enrichment on the basis of the statute of frauds.

The general rule is a broker cannot recover for the reasonable value of services rendered on a theory of quantum meruit where an agreement to pay a broker's commission is unenforceable for want of a writing. (*Wm. E. Doud & Co.* v. *Smith* (1967) 256 Cal.App.2d 552, 559 [64 Cal.Rptr. 222].) *Carey* v. *Cusack* (1966) 245 Cal.App.2d 57, 69 [54 Cal.Rptr. 244], cited by Rader, is inapposite here as it allowed brokers to recover in quantum meruit for subdivision services, which services are outside the ambit of the statute of frauds.

However, because the writings alleged by Rader were sufficient to satisfy the statute, Rader properly plead a claim against both Stone and PSR for quantum meruit/unjust enrichment.

b. *The interference with prospective business advantage counts against Stone and PSR also withstand demurrer scrutiny.*

The elements of the tort of interference with prospective business advantage, "[i]n the real estate brokerage context . . . are: (1) an economic relationship between broker and [lessor] or broker and [lessee] containing the probability of future economic benefit to the broker, (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts on the part of the defendant designed to disrupt the relationship, (4) actual disruption of the relationship, (5) damages to the plaintiff proximately caused by the acts of the defendant." (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 827 [122 Cal.Rptr. 745, 537 P.2d 865].)

In *Buckaloo,* a real estate broker was unable to maintain an action based on contract or implied contract for want of compliance with section 1624. (*Id.,* at pp. 821-822.) However, our Supreme Court held the tort of inten-

tional interference with prospective economic advantage is not dependent on compliance with the statute of frauds. (*Id.*, at p. 822.)

Stone contends this cause of action by Rader must fail, citing from *Buckaloo* to the effect that "[while] the tort . . . is not dependent on the existence of a valid contract . . . the wrong complained of cannot be merely a failure on the part of the actor to comply with an unenforceable contract." (*Id.*, at pp. 826-827.)

Stone misconstrues *Buckaloo*. The wrong complained of in this cause of action is not Stone's noncompliance with a contract, but rather, that Stone has interfered in Rader's advantageous relationship with PSR. Specifically, Rader alleged it had a contract with PSR for PSR to pay a full commission and that Stone: disparaged Rader to PSR; conditioned the lease of the property to PSR on nonpayment of a commission to Rader; insisted on, and actually excluded, Rader from lease negotiations; and refused to pay a commission, knowing and intending such conduct would disrupt the relationship between Rader and PSR.

PSR in turn also claims Rader cannot state a cause of action sounding in this tort against it. PSR argues that both interference with prospective business advantage and interference with contract require the existence of a valid written contract, citing to *Buckaloo*.

Beyond the fact that we find sufficient written memoranda, *Buckaloo* itself dictates directly to the contrary: "The great weight of authority is that the tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage. (1 Harper & James, Torts (1956) pp. 510-514; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 386, pp. 2638-2639; Prosser, Torts (4th ed. 1971) p. 929; Note, *Developments in the Law—Competitive Torts* (1964) 77 Harv.L.Rev. 888, 961-962; Bernhardt, Cal. Real Estate Transactions Supp. (Cont.Ed.Bar 1974) § 5.81.) Thus while the elements of the two actions are similar, *the existence of a legally binding agreement is not a sine qua non to the maintenance of a suit based on the more inclusive wrong.* [Fn. omitted.]" (*Buckaloo* v. *Johnson, supra,* 14 Cal.3d at p. 823, italics ours in addition to original italics.)

*Buckaloo* v. *Johnson, supra,* at page 823 observes that "California courts have on numerous occasions applied these principles in the context of real estate transactions[,]" and cites to *Zimmerman* v. *Bank of America* (1961) 191 Cal.App.2d 55 [12 Cal.Rptr. 319], a leading case in this field. The *Zimmerman* court held "[t]he actionable wrong lies in the inducement to break the contract or to sever the relationship, not in the kind of contract

or relationship so disrupted, whether it is written or oral, enforceable or not enforceable[,]'' and that a party who suffers the loss should be able to recover damages from "a malicious interloper." (*Id.*, at p. 57.)

PSR continues in its contention Rader failed to allege the tort because the only disruptive act charged was that PSR excluded Rader from the lease negotiations. PSR's theory is that Rader's claim arose, and was fully realized, when Rader *procured* PSR in January 1982, and Rader's claim for a commission from Stone did not depend on PSR's subsequent lease negotiations with Stone. We note, however, the lease was not signed until March 1982, so that Rader was not necessarily entitled to a commission as early as January 1982.

In its complaint, Rader alleged: it had an economic relationship with Stone containing the probability of future economic benefit; that PSR had knowledge of the relationship and intentionally excluded Rader from the lease negotiations; and that PSR got the lease at a lower price than if Rader's commission had been fully paid, and Rader was therefore damaged in an amount at least equal to the commission.

These allegations are sufficient as against a demurrer to state a cause of action in interference with prospective business advantage.

Moreover, Rader is not precluded by law from alleging in one cause of action the breach of a contract and an inconsistent theory of recovery in another cause of action. To the extent Rader's allegation in one cause of action of a fully executed contract with Stone is at odds with an allegation in a separate cause of action that PSR interfered in Rader's advantageous relationship with Stone, such inconsistency is not fatal to Rader's claims at the pleading stage, as "a plaintiff is permitted to plead inconsistent or, . . . , alternative counts." (*Skelly* v. *Richman* (1970) 10 Cal.App.3d 844, 856 [89 Cal.Rptr. 556].)

Where the exact nature of the facts is in doubt, or where the exact legal nature of plaintiff's right and defendant's liability depend on facts not well known to the plaintiff, the pleading may properly set forth alternative theories in varied and inconsistent counts. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 356, p. 411.)

c. *Rader has properly plead claims against PSR and Stone for interference with contract.*

"To state a cause of action for inducing a breach of contract, the plaintiff must allege: (1) . . . a valid and existing contract; (2) the defendant

had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the other contracting party; (4) the breach was caused by defendant's wrongful and unjustified conduct; and (5) plaintiff suffered damage as a result of the breach.'' (*Gold* v. *Los Angeles Democratic League* (1975) 49 Cal.App.3d 365, 375 [122 Cal.Rptr. 732].)

 Stone and PSR both demurred to this cause of action on the ground that for want of compliance with the statute of frauds, there was no valid and existing contract between Rader and PSR, and Rader and Stone, respectively. Because we hold the memoranda were sufficient, Rader properly plead claims for interference with contract against both Stone and PSR.

Further, Stone contends PSR satisfied its contractual requirement toward Rader by providing in paragraph 20 of the lease for Stone to pay the commission, and as a result, Rader cannot maintain Stone interfered with its contract with PSR. However, as indicated, paragraph 20 does not *identify* the broker entitled to the commission, and does not obligate Stone to pay anyone; it merely requires Stone to indemnify PSR, if necessary.

The elements of this tort are also sufficiently plead in the second amended complaint.

d. *Rader properly plead a claim against Stone as an intended third party beneficiary of the Stone/PSR contract.*

 Advancing the flip side of the above argument, Stone contends Rader's claim as a third party beneficiary must fail because Rader cannot plead the lease shows on its face it was made *expressly* for Rader's benefit.

The pertinent statute is Civil Code section 1559, which allows for enforcement of contracts by third party beneficiaries. A contract made expressly for the benefit of a third person may be enforced by said third party at any time before the parties thereto rescind it. (*Shell* v. *Schmidt* (1954) 126 Cal.App.2d 279, 290 [272 P.2d 82], cert. den. 348 U.S. 916 [99 L.Ed. 718, 75 S.Ct. 297].) It is not necessary the contract identify or refer to the third party by name; it is sufficient if it can be shown the claimant is of a class of persons for whose benefit it was made. (*Johnson* v. *Holmes Tuttle Lincoln-Merc.* (1958) 160 Cal.App.2d 290, 297 [325 P.2d 193]; 1 Witkin, Summary of Cal. Law, *supra*, § 507, p. 435.)

 ''Insofar as intent to benefit a third person is important in determining his right to bring an action under a contract, it is sufficient that the promisor must have understood that the promisee had such intent. [Citations.] No specific manifestation by the promisor of an intent to benefit the

third person is required." (*Lucas* v. *Hamm* (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685].) In so holding, our Supreme Court disapproved earlier cases to the extent they required "that to permit a third person to bring an action on a contract there must be 'an intent clearly manifested by the promisor' to secure some benefit to the third person." (*Ibid.*)

Rader alleged that in executing paragraph 20 of the lease, it was PSR's intention to satisfy its obligation to pay Rader's commission, and that Stone was presented the lease offer which required PSR to pay Rader the commission absent a provision requiring payment by the lessor. Therefore, Stone was alleged to have had knowledge of PSR's intent in this regard.

Rader's pleading is sufficient to state a cause of action as an intended third party beneficiary.[4]

## CONCLUSION

Since the enactment of the original statute of frauds in England in 1676, the purpose of the statute has been to prevent the commission of fraud (35 Cal.Jur.3d, Frauds, Statute of §§ 1, 2, pp. 9-10), not to facilitate it, and no talismanic incantations are necessary to comply with the statute. The brochure, update, registration form, and the lease offer, are sufficient to satisfy the statute as to Stone and PSR, respectively. The writings, "impliedly, if not expressly, . . ." (*Seck* v. *Foulks, supra,* 25 Cal.App.3d at p. 568), disclose that Stone *authorized* Rader to *procure* PSR as a tenant in the property for 10 years for a commission, and manifested that PSR retained Rader to represent it in leasing Stone's property.

## DISPOSITION

The orders of dismissal are vacated. Rader to receive costs on appeal.

Danielson, J., and Arabian, J., concurred.

On March 27, 1986, the opinion was modified to read as printed above.

---

[4]Because we find the writings comply with the statute of frauds, we need not address whether Stone is estopped from asserting a defense based on the statute, or whether the doctrine of substantial performance would provide relief.

Separately, because we hold Rader may proceed on all causes of action, and therefore the orders of dismissal must be vacated, we need not reach the questions of whether error occurred in the denials of the motions for leave to amend the first four causes of action of the second amended complaint and for reconsideration.