Filed 2/24/14  Yildiz v. AKW Fueling CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| OYVAR YILDIZ, | |
| Plaintiff and Appellant, | G048614 |
| v. | (Super. Ct. No. 30-2012-00598863) |
| AKW FUELING, INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, David T. McEachen, Judge.  Affirmed in part and reversed in part.

Thompson Advocacy and Jason Ryan Thompson for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

\*        \*        \*

The trial court sustained a demurrer to Oyvar Yildiz's first amended complaint that sought damages for breach of a contract to pay a real estate broker's commission. For the reasons expressed below, we affirm in part and reverse in part.

I

FACTS AND PROCEDURAL BACKGROUND

We summarize the underlying facts as alleged in the operative first amended complaint because this appeal follows the sustaining of a demurrer. (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 456.) Yildiz alleged he was a licensed California real estate broker doing business as Pacific Star Real Estate (Pacific Star). In October 2008, he procured buyers Tarun Maitra and Manash K. Paul (collectively Buyers), who signed a written purchase agreement with defendant AKW Fueling, Inc., and Ara Wansikehian (collectively AKW) to buy an ARCO service station in Ladera Ranch for $1.2 million.[1]

Yildiz attached to his complaint the California Association of Realtors form "Business Purchase Agreement and Joint Escrow Instructions" (BPA). Under the heading "Agency," paragraph 46 identified Pacific Star as both the listing agent and selling agent. That paragraph also provided "Real Estate Brokers are not parties to the Agreement between Buyer and Seller." Under the heading "Other Terms and Conditions," paragraph 40 of the BPA included the following handwritten term: "Seller to pay 6% commission to broker." (Boldface and some capitalization omitted.) Under the heading "Broker Compensation from Seller," paragraph 53 of the BPA included the following preprinted term: "A. Upon Close of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and

---

[1] AKW did not file a respondent's brief. As a result, we may accept as true the statement of facts in Yildiz's opening brief. The failure to file a respondent's brief does not mandate automatic reversal, however. Instead, we examine the record and reverse only if prejudicial error is found. (Cal. Rules of Court, rule 8.220(a); *Estate of Supeck* (1990) 225 Cal.App.3d 360, 365.)

Broker. [¶] B. If escrow does not close, compensation is payable as specified in that separate written agreement." (Boldface and some capitalization omitted.)

Yildiz alleged AKW breached its agreements with both him and the Buyers by demanding the agreed-upon price be increased by $300,000, wrongfully refusing to allow the sale to proceed, and refusing to pay Yildiz a $72,000 commission.

AKW demurred to the first amended complaint, arguing it failed to state facts sufficient to constitute a cause of action and the cause of action was vague, ambiguous, and uncertain. AKW asserted the contract attached to the complaint stated Yildiz was not a party to the agreement, and Yildiz failed to supply a separate written agreement between himself and AKW. The trial court sustained the demurrer without leave to amend, and entered a judgment of dismissal on May 8, 2013.

II

DISCUSSION

A.      *Standard of Review and Appellant's Burden on Appeal*

When the trial court sustains a demurrer, we review the complaint de novo to determine whether it alleges facts stating a cause of action on any possible legal theory. (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487 (*Koszdin*).) "'""We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.""' [Citations.]" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.) "Further, 'we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' [Citations.]" (*Melton v. Boustred* (2010) 183 Cal.App.4th 521, 528.)

Nonetheless, "[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer

3

as to the cause of action.  [Citation.]  We will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings. [Citation.]" (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031; *Sui v. Price* (2011) 196 Cal.App.4th 933, 938.)

"When a demurrer is sustained without leave to amend, we also must decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Koszdin, supra,* 186 Cal.App.4th at p. 487.)  "The plaintiff bears the burden of proving there is a reasonable possibility of amendment.  [Citation.] . . . [¶]  To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.]  The assertion of an abstract right to amend does not satisfy this burden. [Citation.]  The plaintiff must clearly and specifically set forth the 'applicable substantive law' [citation] and the legal basis for amendment, i.e., the elements of the cause of action and authority for it.  Further, the plaintiff must set forth factual allegations that sufficiently state all required elements of that cause of action.  [Citations.]  Allegations must be factual and specific, not vague or conclusionary. [Citation.]" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.)

B.     *The First Amended Complaint Can Be Amended to State a Cause of Action for Breach of Contract*

The trial court sustained without leave to amend AKW's demurrer to Yildiz's single cause of action for breach of contract because the court found he failed to adequately allege a contract between him and AKW for his commission.  According to the trial court, the only contract Yildiz alleged was the BPA between AKW and the Buyers, and the BPA expressly stated Yildiz was not a party to it.  The court also pointed out that paragraph 53 of the BPA referenced a separate written agreement between Yildiz

4

and AKW regarding his commission, but Yildiz alleged no such separate agreement.[2] We agree the first amended complaint failed to adequately allege a breach of contract claim because its allegations regarding Yildiz's contract with AKW contradict the terms of the BPA attached to the pleading, and Yildiz failed to allege an interpretation that would reconcile those inconsistencies. Nonetheless, we conclude the trial court erred in denying Yildiz leave to amend because he identified a means of amending his pleading that would state a cause of action.

When AKW signed the BPA, the first amended complaint alleged the BPA "became two separate and distinct written agreements, all in accordance with *Torelli v. J.P. Enterprises, Inc.* (1997) 52 Cal.App.4th 1250, at pages 1254-1257 [(*Torelli*)], and *Weber v. Dobyns* (1961) 193 Cal.App.2d 402, at pages 406 through 409 [(*Weber*)], [(1)] a written agreement by and between [AKW], as the sellers, and the [Buyers for the sale of the ARCO station], and [(2)] a written agreement by and between [AKW] to pay the expressly agreed upon commission of 6% of $1,200,000 to [Yildiz] pursuant to the instrument's terms and provisions pertinent thereto." The complaint further alleged Yildiz procured the Buyers for AKW and the Buyers were ready willing and able to perform, but AKW breached both agreements in the BPA "by refusing to proceed with the sale and purchase or to pay the commission owed to [Yildiz] by demanding that the price agreed upon and as set forth in [the BPA] be increased by [$300,000] and refusing to otherwise perform or allow the sale to proceed and refusing to pay any commission to [Yildiz]." Finally, Yildiz alleged AKW never paid his commission and its breach of their agreement damaged him in the amount of $72,000, plus interest.

---

[2] The clerk's transcript does not include a copy of the trial court's minute order setting forth its ruling on AKW's demurrer. On our own motion, we therefore judicially notice the court's March 26, 2013 minute order. (Evid. Code, §§ 452, subd. (d), 459; *Beckley v. Board of Administration* (2013) 222 Cal.App.4th 691, 693, fn. 1.)

5

In the *Torelli* case Yildiz cited in his pleading, we summarized the basic law regarding a broker's contractual right to receive a commission: "Brokers typically protect their right to a commission by obtaining from their clients listing agreements which specifically delineate the rights and duties of the parties. . . . [¶] The absence of a listing agreement does not, however, deprive a broker of his or her commission. Rather, the right to the commission then depends on the document which *does* set forth the commission agreement, sometimes the real estate sale contract itself, sometimes the escrow instructions. . . . 'The broker's right to recover a commission is markedly different when he does not have a listing agreement with the owner. . . . [W]hen the broker does not have the advantage of a prior listing agreement, he must rely *solely* upon the contract between the buyer and seller, or some other written promise to pay compensation, for the recovery of his commission.' [Citation.] [In other words,] '[w]here the broker does not have a listing contract, he must rely upon the promise to pay a commission contained in the contract between the parties, and where this agreement is the only written document providing for the payment of the commission, he is subject to the terms and conditions of payment contained in the agreement.' [Citation.]" (*Torelli*, *supra*, 52 Cal.App.4th at p. 1254.)

In *Torelli*, a broker introduced a potential buyer to the seller of a property, helping the potential buyer to prepare an offer and submit it to the seller. The offer included a 5 percent commission for the broker with the seller and buyer each agreeing to pay one-half of the commission. The seller responded with a counteroffer that made minor changes to the proposed transaction, but included the identical commission provision. The broker was not a party to either the original offer or the counteroffer, and had no valid listing agreement with the seller. After the counteroffer expired without the parties reaching an agreement, the buyer contacted the seller directly and negotiated an agreement without the broker's knowledge. The agreement was for essentially the same amount as the counteroffer, but excluded the broker's commission. When the broker

6

discovered the transaction he sued to collect his commission. (*Torelli*, *supra*, 52 Cal.App.4th at pp. 1253-1254.) Based on the foregoing rules, we concluded the broker stated a claim for the commission described in the expired counteroffer because the broker brought the buyer and seller together, even though the broker was not a party to the counteroffer or the parties' final agreement.

The *Weber* case Yildiz cited in his pleading also involved a broker who recovered his commission from the sellers even though he was not a party to the exchange agreement that included the sellers' only promise to pay the broker's commission. (*Weber*, *supra*, 193 Cal.App.2d at pp. 407-408.) The sellers promised to pay the broker's commission in their written acceptance of the buyers' offer to exchange the sellers' motel for a taxi business the buyers owned. (*Id*. at pp. 403-405.) The *Weber* case is the basis of Yildiz's allegation that the BPA actually included two separate agreements—the purchase and sale agreement between AKW and the Buyers, and the commission agreement between AKW and Yildiz. The *Weber* court stated, "[the sellers], when they signed the acceptance, *in effect* made two contracts, one with the [buyers], for the exchange, and one with [the broker], to pay for his services in procuring the exchange agreement for them." (*Weber*, *supra*, 193 Cal.App.2d at p. 407, italics added.) The *Weber* court, however, went on to explain that the acceptance actually formed a single contract between the sellers and the buyers to exchange their businesses, and the sellers' promise in the acceptance to pay the broker's commission was actually the memorialization of a separate commission agreement between the sellers and the broker required to satisfy the statute of frauds. (*Id*. at pp.407-408; see also *Torelli*, *supra*, 52 Cal.App.4th at p. 1257.)

The statute of frauds requires that "an agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate is invalid unless the agreement *or some note or memorandum of the agreement* is in writing and subscribed by the party to be charged or by his agent." (*Phillippe v. Shapell Industries* (1987)

7

43 Cal.3d 1247, 1255, italics added; Civ. Code, § 1624, subd. (a)(4).)  The agreement itself need not be in writing; rather, any note or memorandum memorializing the agreement may be sufficient.  (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 350, p. 397 ["The memorandum is not the contract, but merely evidence of its terms; the oral agreement is the contract.  Hence, an oral agreement may originally be subject to the bar of the statute [of frauds], but may become enforceable if a note or memorandum is subsequently made"].)

To satisfy the statute of frauds as to a contract for a broker's commission, "[t]he writing need not contain all the terms of the contract, and the principal requirements to satisfy the statute are that the memorandum shows the authority of the broker to act for the owner [citation], and is subscribed by or on behalf of the party to be charged [citation].  [¶]  When these requirements are met, the other terms, including the amount of commission, and even the agreement to pay the commission, may be shown by parol [evidence].  [Citation.]" (*Rader Co. v. Stone* (1986) 178 Cal.App.3d 10, 21 (*Rader*); see *Barcelon v. Cortese* (1968) 263 Cal.App.2d 517, 525 (*Barcelon*) ["A memorandum is deemed sufficient if it shows the employment relationship between the parties and neither the amount of the commission nor a specific promise to pay the same need be expressed in the memorandum"].)

"'A broker's action for a commission arises when the commission becomes due and payable . . . .'  [Citation.]  'Generally speaking, a real estate broker has earned his commission when he has brought to the vendor a purchaser who is ready, willing and able to buy the property upon the terms on which the agent is authorized to sell, or when a written contract upon any terms acceptable to the seller has been entered into with a purchaser originally brought to the vendor by the agent.  [Citation.]  It is not necessary for the sale to be completed, under the foregoing rule, for the broker to be entitled to his commission.  [Citation.]'  [Citations.]  [¶]  The general rule does not apply, however, where the broker's contract specifies additional conditions on the payment of

8

commission." (*Estate of Lopez* (1992) 8 Cal.App.4th 317, 320-321; see *Park v. First American Title Co.* (2011) 201 Cal.App.4th 1418, 1424.) For example, listing agreements often condition the seller's obligation to pay the broker's commission on the close of escrow or the seller's receipt of funds from escrow (see, e.g., *RC Royal Development & Realty Corp. v. Standard Pacific Corp.* (2009) 177 Cal.App.4th 1410, 1418), but the parties are free to impose any lawful condition they choose (*Blank v. Borden* (1974) 11 Cal.3d 963, 969).

Here, Yildiz alleged AKW promised to pay him a 6 percent commission enforceable under the *Torelli* and *Weber* cases he cited in his complaint. Although the BPA is not an agreement between Yildiz and AKW—and Yildiz is not a party to it—the BPA nonetheless is a note or memorandum that memorializes a commission agreement between Yildiz and AKW and satisfies the statute of frauds. (*Rader*, *supra*, 178 Cal.App.3d at p. 21; *Barcelon*, *supra*, 263 Cal.App.2d at p. 525.) The BPA establishes Yildiz's authority to act as AKW's agent by identifying him as the listing and selling agent. The BPA also identifies the property involved and sets forth AKW's promise "to pay 6% commission to [Yildiz]." The first amended complaint alleged Yildiz fully performed by procuring the Buyers who entered into the BPA with AKW and were ready, willing, and able to perform under the BPA. Nothing on the face of the BPA or the first amended complaint conditioned AKW's promise to pay Yildiz his commission on the transaction closing or any other condition, and therefore Yildiz alleged facts establishing the right to his commission.[3] (*Estate of Lopez*, *supra*, 8 Cal.App.4th at p. 320.)

---

[3]    Because nothing on the face of the BPA or the first amended complaint suggests Yildiz's commission was contingent on closing the sale between AKW and the Buyers, Yildiz's allegation that AKW prevented the sale from closing by demanding an additional $300,000 is irrelevant. Nonetheless, we note that "[a] prospective seller . . . owes a duty to the broker not to act arbitrarily or in bad faith to prevent consummation of the transaction where the broker has found a prospective buyer who is ready, able, and willing to purchase the property, and the prospective buyer and the prospective seller

9

We acknowledge Yildiz alleged the BPA was *the* agreement he had with AKW rather than a memorialization of a separate agreement. Nonetheless, Yildiz's citation to *Torelli* and *Weber* in the first amended complaint sufficiently supports his claim regardless of whether he characterizes the BPA as the agreement he had with AKW or merely as evidence of that agreement. Moreover, any ambiguity can be clarified on remand through the filing of an amended pleading.

The true shortcoming for Yildiz's breach of contract cause of action arises from paragraph 53 of the BPA that he attached and incorporated into the first amended complaint. As explained above, that paragraph states AKW will pay Yildiz a commission "as specified in a separate written agreement between [AKW] and [Yildiz]." Accordingly, paragraph 40 of the BPA states AKW will pay Yildiz a 6 percent commission without any limitation or qualification, but paragraph 53 states AKW will pay Yildiz only as specified in a separate written agreement the existence of which Yildiz failed to allege. The trial court relied on this inconsistency in sustaining AKW's demurrer.

In the trial court and here, Yildiz resolved this inconsistency or ambiguity by arguing AKW's promise in paragraph 40 to pay a 6 percent commission supersedes paragraph 53's statement that Yildiz's right to a commission is established by a separate written agreement. To support this contention, Yildiz cited Civil Code section 1651, which states, "Where a contract is partly written and partly printed, or where part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without

---

have agreed upon the terms and conditions of the sale. [Citations.] [¶] Under such circumstances, if a sale is not consummated because the seller, acting arbitrarily or in bad faith, prevented consummation, the broker is entitled to his commission even though his contract provides that payment shall be made out of the proceeds of the sale [citations] or upon successful completion of the escrow [citation]." (*Stromer v. Browning* (1966) 65 Cal.2d 421, 424-425.)

10

special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be so far disregarded." Here, AKW's promise to pay Yildiz a 6 percent commission is handwritten in a section for additional terms on a form contract, but paragraph 53's reference to a separate written agreement is part of the preprinted form contract.

Based on Civil Code section 1651, Yildiz's interpretation of the contract is a reasonable one and it must be accepted in ruling on AKW's demurrer. (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239 ["'[W]here an ambiguous contract is the basis of an action, it is proper, if not essential, for a plaintiff to allege its own construction of the agreement. So long as the pleading does not place a clearly erroneous construction upon the provisions of the contract, in passing upon the sufficiency of the complaint, we must accept as correct plaintiff's allegations as to the meaning of the agreement'"]; see also *SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83 (*Liebert*).)

Unfortunately, Yildiz only argued this interpretation of the BPA in the trial court; he did not allege it in the first amended complaint. Accordingly, the trial court properly sustained AKW's demurrer to the breach of contract cause of action, but erred in failing to grant Yildiz leave to amend to allege this interpretation of the BPA.[4]

---

[4]     In the trial court, AKW argued Yildiz failed to allege a breach of contract cause of action against defendant Wansikehian in his individual capacity because Wansikehian was not a party to the BPA. This challenge is not supported by the first amended complaint or the BPA. The first amended complaint repeatedly alleged both AKW Fueling, Inc., and Wansikehian executed and entered into the BPA. In ruling on the demurrer, we must accept that allegation as true unless the BPA attached to the first amended complaint unambiguously contradicts the allegation. (*Liebert*, *supra*, 162 Cal.App.4th at p. 83 ["if the exhibits are ambiguous and can be construed in the manner suggested by plaintiff, then we must accept the construction offered by plaintiff"].) The BPA is ambiguous on the seller's identity as between AKW Fueling, Inc. and Wansikehian. Rather than identifying AKW Fueling, Inc. as the seller, the BPA

11

### III

#### DISPOSITION

The judgment is reversed in part and affirmed in part. We affirm the trial court's decision sustaining AKW's demurrer to the breach of contract on the ground Yildiz failed to allege facts sufficient to state a cause of action, but we reverse the court's decision denying Yildiz leave to amend. Yildiz shall recover his costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.

---

shows Wansikehian signed the BPA in the spot provided for the seller without any indication he signed solely as a representative of AKW Fueling, Inc. AKW Fueling, Inc., is identified on the following line that simply states "By," which suggests AKW Fueling, Inc., was signing for Wansikehian. AKW did not file a respondent's brief to clarify this ambiguity.